UNITED STATES of America

v.

Sandra E. WATKINS, Appellant.

No. 73–2226.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 18, 1974.

Decided Feb. 5, 1975.

Peter R. Kolker, Washington, D. C. (appointed by this Court) for appellant.

James M. Hanny, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin and Eugene M. Propper, Asst. U. S. Attys., were on the brief, for appellee.

Before LEVENTHAL and MacKIN-NON, Circuit Judges, and MERHIGE,* United States District Judge for the Eastern District of Virginia.

MERHIGE, District Judge:

Appellant was charged with three counts of possession with intent to distribute marijuana, cocaine and heroin, in violation of 21 U.S.C. § 841(a), and three counts of possession of these drugs, in violation of 33 D.C.Code § 402. She was tried by a jury which returned a verdict of guilty as to the three counts of simple possession. Imposition of sentence was suspended and appellant was placed on a two-year term of probation.

On appeal, appellant raises two claims: (1) that evidence seized at the time of her arrest was improperly admitted at trial; and (2) that the trial judge erred in denying her motion for judgment of acquittal. We find the record and authorities support appellant's contentions and, accordingly, reverse her convictions.

At trial, the Government's case in chief consisted of the testimony of four officers assigned to the Narcotics Branch of the Metropolitan Police Department who, on July 5, 1973, participated in the execution of a warrant to search Apartment 303 in a building at 1341 Clifton Street, N.W., Washington, D. C. The warrant had been obtained on the basis of information from an unidentified informant that narcotics had been purchased on several recent occasions at the Clifton Street address from a Negro male known as "Boggy."

The officers testified that upon arriving at Apartment 303, Sergeant Boyd, supervisor of the search team, knocked on the door and the door was opened and then quickly closed by an individual later identified as Gordon Bragg. Thereafter, Sergeant Boyd again knocked on the door, simultaneously identifying himself and stating that he had a warrant to search the apartment. Receiving no re-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

sponse, Sergeant Boyd ordered the door forced open by other officers assigned to his detail.

Upon gaining admittance to the apartment, the officers found appellant Watkins sitting on a bed in the bedroom, Bragg standing near the commode in the bathroom, and another individual identified as Alfred McKenny sitting on a couch in the living room. During the search of the apartment which ensued, the officers observed books, in which appellant's name appeared, in a hall closet, as well as articles of women's clothing in the bedroom. Moreover, the officers stated that they seized the following items in the bedroom of the apartment: four tinfoil packages containing cocaine from the top drawer, and drug-related paraphernalia containing traces of heroin from the bottom drawer of a bedside dresser table; $1,480 in cash and a plastic bag containing heroin located between the mattress and box spring of the bed on which appellant was sitting; $733 in cash in a clothing bag in the closet; and three receipts indicating appellant had paid the rent on the apartment for April and June 1973 and that she had paid for utility service in June 1972. The officers also testified that they seized two napkins containing marijuana seeds from the top of the refrigerator in the kitchen of the apartment.[1]

At the trial, appellant objected to the introduction of the rent receipts on two occasions, each time contending that they constituted hearsay evidence. Initially the district court sustained appellant's objection. Appellant's counsel, however, anticipating that the Government would again attempt to introduce these documents, renewed his objection immediately following the luncheon recess. On this occasion counsel explained

that since the receipts would be offered for the truth of their contents, that is, that appellant did in fact pay the rent for Apartment 303, their introduction through a police officer made it impossible for counsel to cross-examine the alleged author of those documents. The district court then inquired whether appellant would testify in her own behalf. In response to counsel's representation that she would, the court stated that it would admit the receipts into evidence, suggesting that appellant would, therefore, have an opportunity to explain the existence of the receipts.

While it is a matter of hornbook law that receipts are hearsay as independent evidence of the making of payment,[2] the Government contends for the first time on appeal that these documents were tendered not for the truth of their contents, but rather to show they were found in the bedroom occupied by appellant on the day in question. This contention carries little weight with this Court in light of the comments of the trial judge during a bench conference on the issue, to the effect that what the Government was "seeking to prove is that this woman paid whatever rent is paid and got a receipt for it." Not only did the prosecution fail to dispel the Court's conclusion in this regard, but pointedly informed the jury during the opening statement that it would "put in some personal papers which were seized during the warrant to show who was paying for this apartment and who was living there." To now contend as it does that the purpose was otherwise is so patently contra to the record as to be unworthy of any detailed discussion on the part of the Court. We find from the record that a principal, if not the primary, purpose of the introduction of the

---

1. Additional testimony was adduced concerning a tinfoil package retrieved from the commode near which Bragg was standing when the police entered the apartment and a bag containing cocaine and heroin which was thrown from a window of the apartment while the police were attempting to force open the apartment door. Since Bragg alone was

charged with and acquitted of possession of these drugs, that testimony is not relevant for the purpose of this appeal.

2. McCormick, *Evidence*, 588 (2d ed. 1972). See also, *Pacific Gas & Elec. Co. v. G. W. Thomas Drayage & R. Co.*, 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641 (1968).

contested documents was to establish exactly what the prosecution had assured the jury in its opening statement it was intended for—to show "who was living there." We recognize, of course, that out-of-court declarations, such as these documents, may be admitted for a material purpose other than the verity of the assertions.[3] We find, however, that in light of the Government's initial representations to the jury, the prejudice to the defendant was so grave as to preclude the introduction of the rent and utility receipts for any purpose whatsoever, through a witness other than the declarant.[4]

■ The Government also argues that since Officer Vislay, through whom the receipts were offered, was subjected to cross-examination and testified that he did not know who paid or who had received the rent for Apartment 303, appellant's claim is without merit. We find, however, that Officer Vislay's testimony could not reasonably cure the dangers traditionally recognized as inherent in hearsay, namely the lack of the normal safeguards of oath, confrontation and cross-examination of the credibility of the extrajudicial declarant.[5] Similarly, we find the district court's suggestion, that since appellant intended to testify she would have an opportunity to rebut the probative value of the receipts, placed an unacceptable burden upon appellant's Fifth Amendment privilege to remain silent.

At the close of the Government's case in chief, appellant moved for a judgment of acquittal on the grounds that the Government had failed to make out a case of constructive possession. The district court denied the motion. It is from this ruling that Watkins raises her second claim.

■ In deciding this question, we must measure the evidence as it was when the Government rested its case. Contrary to the Government's assertions, we do not, therefore, consider either the rent receipts which were improperly admitted or any of the evidence put on by the defense. See *United States* v. *Bethea*, 143 U.S.App.D.C. 68, n. 4, 442 F.2d 790, 792, n. 4 (1972); *Powell* v. *United States*, 135 U.S.App.D.C. 254, n. 9, 418 F.2d 470, 473, n. 9 (1969).

■ In this jurisdiction, it is only when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the judge may properly take the case from the jury. *United States* v. *Lumpkin*, 145 U.S.App.D.C. 162, 168, 448 F.2d 1085, 1091 (1971). Moreover, when applying this standard, no legal distinction is made between circumstantial evidence and direct evidence. *United States* v.

---

3. See, *e. g., Webb* v. *Fuller Brush Co.*, 378 F.2d 500 (3d Cir. 1967) (published articles to show notice of dangers of hormone facial cream); *Frank* v. *United States,* 220 F.2d 559 (10th Cir. 1955) (statements made to defendant by third parties to show state of mind).

4. Compare *Smith* v. *United States*, 70 U.S. App.D.C. 255, 105 F.2d 778 (1939), wherein this Court held, in a prosecution for possession of numbers slips, that it was not prejudicial error for the trial court to have permitted a police officer to testify as to specific information he had received regarding numbers being written in a particular barber shop to show probable cause for the arrest, in view of (1) the officer's other uncontradicted testimony that upon arrival at the barber shop he witnessed the accused in possession of and in the act of writing slips, and (2) the Court's admonition to the jury not to consider the officer's statement as affecting the guilt or innocence of the accused.

In the matter *sub judice*, the rent receipts were not cumulative, but instead constituted the prosecution's primary evidence of appellant's control over the apartment and its contents. Moreover, the prosecution did not ask the district court to caution the jury as to the limited use of the receipts, nor could the court be expected to provide such a warning in light of its previous statement (*supra*, n.3).

5. McCormick, *Evidence*, § 245 (2d ed. 1972). See *Pointer* v. *Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

*Fench*, 152 U.S.App.D.C. 325, 333, 470 F.2d 1234, 1242 (1972).

Since there is no question that appellant did not have actual possession of the contraband seized by the police, the Government, to prove constructive possession, must show that the appellant was in a position or had the right to exercise dominion and control over the narcotics. *United States* v. *Holland*, 144 U.S.App.D.C. 225, 227, 445 F.2d 701, 703 (1971); *United States* v. *Bethea, supra.* Further, as this Court has interpreted the statute under which appellant was convicted, 33 D.C.Code, § 402, there must be evidence to show that there was a knowing possession. *United States* v. *Weaver*, 148 U.S.App.D.C. 3, 458 F.2d 825, 826 (1972). On the basis of the record before the Court, we must conclude that the Government failed to prove either of these elements.[6]

The only admissible evidence offered by the Government which in any way linked appellant to Apartment 303 or the narcotics found therein, was appellant's presence in a room where the cocaine and heroin, although concealed from plain view, were found, and several books in which appellant's name appeared in a hall closet. While it is true, as Judge Tamm has noted, that "the more cases one reads on constructive possession the deeper he is plunged into a thicket of subjectivity," *United States* v. *Holland, supra* (concurring), we have little difficulty in objectively concluding that the Government's case did not show facts that would permit a reasonable juror to reach a conclusion of guilt beyond a reasonable doubt. We find, therefore, that the district court erred in denying appellant's motion for judgment of acquittal.

The judgment of the district court is reversed.

---

6. In examining appellant's claim, we are mindful of Chief Judge Bazelon's *caveat* that a position of dominion or control "should not be lightly imputed to one found in another's apartment or home" and that "(i)f an inference of constructive possession must be made,

the jury must have before it information about the regularity with which the person in question occupied the place and about his special relationship with the owner or renter." *United States* v. *Holland, supra.*