UNITED STATES of America

v.

Thomas E. REESE, Appellant.

No. 76–1523.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 3, 1976.

Decided June 6, 1977.

As Amended July 7, 1977.

Rehearing Denied Oct. 5, 1977.

Daniel B. Edelman, Washington, D. C. (appointed by this court) for appellant.

Neil A. Kaplan, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and David R. Addis, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before BAZELON, Chief Judge, and LEVENTHAL and MacKINNON, Circuit Judges.

Opinion for the court filed by MacKINNON, Circuit Judge.

MacKINNON, Circuit Judge:

Appellant was indicted for possession of 24,000 milligrams of heroin with intent to distribute, 21 U.S.C. § 841(a) (1970), and possession of heroin, D.C.Code § 33–402 (1973). The charge of simple possession was dismissed at the Government's motion,

and appellant was convicted of the remaining charge following a jury trial. He was sentenced to imprisonment for two to six years with a special parole term of three years. In this appeal, the conviction is attacked on several grounds. We affirm.

Appellant was observed by police officers at 11:45 P.M. on September 24, 1975, driving on Georgia Avenue, N.W., on the wrong side of the median. Appellant's vehicle nearly collided with the police car. When they turned around and pursued him, lights and siren on, appellant took evasive action. When his car was stopped, appellant initially started to walk away from the police cruiser. When asked for a driver's license and registration, he retrieved the registration and a carbon copy of a rental agreement for the automobile.[1] One officer testified that Reese obtained the documents from the glove compartment, while the other whose view was obstructed testified that they came from the sun visor. Appellant was unable to produce a driver's license and was placed under arrest for operating a motor vehicle without a permit.

The rental agreement indicated that the automobile was a rental car, apparently leased by a woman.[2] An officer entered the car to take it to the station, and when he slammed the car door the glove compartment "fell open" revealing $600 in currency and a paper bag containing small pieces of white paper, which he suspected to be numbers slips. At the station, the glove compartment contents were examined more closely. The paper bag was found to contain a number of glassine envelopes, twenty of which contained a white powdery substance, later analyzed as 24,232 milligrams of 5.2 percent heroin[3] having a street value of $3,000.

Appellant told one of the arresting officers that he was on his way to Virginia from New Jersey and had become lost, taking a wrong turn into the District of Columbia on Georgia Avenue. Later that day, he told Detective Isaac that he had no friends or relatives in the District. He also stated that he had "knowledge of illicit narcotics trafficking in the States of New York and New Jersey," but not in the District of Columbia.[4] In looking through appellant's personal effects, however, the detective found a list of names, addresses and telephone numbers of several people who lived in the District of Columbia.

Appellant testified and controverted the Government's evidence in several respects. He stated that one Roger Ugaro, his sister's fiance, who lived in East Orange, New Jersey, had "just let [him] . . . use [the car]."[5] Ugaro had told him that the registration was over the sun visor. Appellant admitted that he had discussed his knowledge of narcotics traffic with Officer Isaac, but stated that he was merely discussing public knowledge. He stated, however, that Ugaro was involved with narcotics and he thought that Ugaro used heroin.[6] Appellant denied any knowledge of the heroin in the glove compartment and denied attempting to evade police. He stated that he had retrieved the registration from over the sun visor. Appellant also denied stating that he did not know anyone in the District, and stated that he did in fact know people here. He said that when he left New Jersey he had his driver's license, a credit card, and $13 in cash, and that these items might be in his sweatshirt in the back

---

1. Tr. 23, 34, 39, Defendant's Ex. 1 (unless otherwise noted, transcript references are to the trial on March 31, 1976).

2. The "Customer's Name" on the car rental agreement was "Toni M. Westry" and the agreement was signed "Toni M. Westry" in the box for "Signature of Customer." Reese told the arresting officer he got the car "[f]rom his girl friend," Tr. 20. The copy of the rental agreement also bore a signature "Roger Ugaro" in the box labelled "Signature of additional customer."

3. According to the prosecution expert, this concentration was suitable for street sale. This was more than an addict might reasonably possess for his personal use. Tr. 52–55.

4. Tr. 62.

5. Tr. 84.

6. Tr. 80.

of the car. He was impeached by a 1966 armed robbery conviction.

On rebuttal, the officer who had searched the car testified that he had searched thoroughly and found no money (other than the $600 in the glove compartment), credit cards or driver's license, and that the sweatshirt had no pocket. In oral argument the prosecutor pointed out that driving from New Jersey over toll roads one would need money and this indicated that Reese would have had to open the glove compartment where the only money (and narcotics) were. Hence he would know of the presence of the narcotics.

## I.

At the close of the Government's case in chief, appellant moved for a judgment of acquittal on the ground that the Government's evidence did not establish possession with intent to distribute.[7] Appellant contends that the district court's denial of this motion was error.

Appellant challenges only the district court's conclusion that there was sufficient evidence of constructive possession to go to the jury.[8] The contrary conclusion is required, he argues, by the trilogy of *United States v. Watkins,* 171 U.S.App.D.C. 158, 519 F.2d 294 (1975); *United States v. Holland,* 144 U.S.App.D.C. 225, 445 F.2d 701 (1971), and *United States v. Bethea,* 143 U.S.App.D.C. 68, 442 F.2d 790 (1971). Particularly apposite, appellant argues, is *Bethea,* where the appellant was a front-seat passenger in a car in which heroin capsules were found under the back seat, where another passenger was seated. We found the evidence of possession in *Bethea* insufficient to survive a motion for judgment of acquittal. Similarly, in *Watkins* and *Holland,* denials of motions for judgment of

acquittal were reversed where there was no evidence that the appellants had any control over apartments in which narcotics were found.

These decisions do not control the disposition of this case. It is only when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that a motion for judgment of acquittal may be granted. In passing upon the motion, the court must view the evidence in the light most favorable to the Government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact. *United States v. Fench,* 152 U.S.App. D.C. 325, 333, 470 F.2d 1234, 1242, *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973); *United States v. Lumpkin,* 145 U.S.App.D.C. 162, 168, 448 F.2d 1085, 1091 (1971). The evidence here showed that, unlike the appellants in *Bethea, Holland,* and *Watkins,* the appellant was alone in the car and had sole control over it. The heroin was within his arm's reach. Appellant attempted to evade police after a minor traffic violation and then tried to walk away from police after his car was stopped. There was testimony that he had retrieved the car's registration from the glove compartment where the drugs and a substantial sum of money were found. He admitted knowledge of narcotics traffic, at least in New Jersey and New York. A book of names and addresses of Washington people was found in the car, suggesting that appellant may have had a business purpose for his trip to Washington, and the heroin was packaged in 20 glassines as if for sale. The fact that appellant was not the owner or lessor of the car is not alone sufficient to overcome the weight of evidence indicating that appellant possessed

---

7. Tr. 74.

8. To prove constructive possession of narcotics, the Government must show that the defendant was in a position or had the right to exercise dominion and control over the contraband. *See United States v. Watkins,* 171 U.S. App.D.C. 158, 162, 519 F.2d 294, 298 (1975); *United States v. Holland,* 144 U.S.App.D.C. 225, 227, 445 F.2d 701, 703 (1971). Intent to

distribute may be inferred from circumstantial evidence, such as packaging and possession of a quantity beyond that an addict would normally possess for personal consumption. *See United States v. James,* 161 U.S.App.D.C. 88, 112, 494 F.2d 1007, 1031, *cert. denied,* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974). *See* note 3 *supra.*

the heroin. *See, e. g., United States v. Lacouture,* 495 F.2d 1237 (5th Cir.), *cert. denied,* 419 U.S. 1053, 95 S.Ct. 631, 42 L.Ed.2d 648 (1974); *United States v. Gonzalez,* 456 F.2d 1067 (9th Cir. 1972) (per curiam). As the Fifth Circuit stated,

> We are unprepared to hold that, as a matter of law, one may insulate himself from the drug laws by employing a borrowed vehicle and concealing the contraband thoroughly. . . . [The appellant] was in sole control, and the jury doubtless thought it unlikely that such a large amount of this drug would have been carelessly left concealed in the car by a third person.

495 F.2d at 1239. We conclude that the trial court properly allowed the present case to go to the jury.

## II.

Appellant next argues that the trial court improperly excluded Roger Ugaro from testifying, in violation of appellant's Sixth Amendment right to compulsory process. Appellant contends that the district court did not adequately examine the basis for Ugaro's asserted self-incrimination privilege, and confused the privilege of a criminal defendant with that of a witness. A defendant, appellant argues, may assert a blanket privilege and refuse to testify altogether. In contrast, appellant contends, a witness must take the stand and assert the testimonial privilege in response to particular questions. Appellant acknowledges that the district court may bar a witness from testifying in the jury's presence if the court properly concludes that the witness will assert privilege as to essentially all questions which may be put to him, *see e. g., United States v. Lacouture, supra; United States v. Johnson,* 488 F.2d 1206 (1st Cir. 1973). We have held in certain cases that the jury may not draw inferences from a refusal to testify, and that a defendant has no right to put a witness on the stand simply to require him to assert his Fifth Amendment privilege before the jury. *See, e. g., Bowles v. United States,* 142 U.S.App.D.C. 26, 32, 439 F.2d 536, 542 (1970) (*en banc*), *cert. denied,* 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971); *Fletcher v. United States,* 118 U.S. App.D.C. 137, 332 F.2d 724 (1964). In this case, appellant's counsel stated that it was "acceptable" for Ugaro to "take the Fifth Amendment . . . out of the presence of the jury" (Tr. 4).

Appellant contends, however, that the court must make a personal inquiry to ascertain that the defendant has a valid claim of privilege and that such a claim would extend to virtually all questions that might be asked. In the present case, appellant argues, the trial court failed to make a sufficient inquiry into Ugaro's asserted privilege. Appellant contends that although the court knew that Ugaro's assertion of privilege extended to less than all possible areas of inquiry, it nevertheless held that Ugaro must either stay off the stand altogether or answer all questions posed.

The three Fifth Circuit cases upon which he principally relies, *United States v. Melchor Moreno,* 536 F.2d 1042 (5th Cir. 1976); *United States v. Gomez-Rojas,* 507 F.2d 1213, 1219-20 (5th Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975); *United States v. Waddell,* 507 F.2d 1226, 1228 (5th Cir. 1975), do not establish the broad principles ascribed to them by appellant. *Waddell* and *Gomez-Rojas* both involved a complete failure by the trial judge to make any inquiry at all into a "bald" assertion of privilege by a single co-conspirator-informant. In reversing the convictions, the Fifth Circuit noted that the "custom is for the trial judge to examine the protesting witness outside the presence of the jury," and indicated that the trial court was required at the new trial to "hold a hearing to determine whether [the witness'] fear of self-incrimination is well founded and what the parameters of his Fifth Amendment rights are . . . ." 507 F.2d at 1220. *Melchor Moreno* involved a virtually identical refusal to testify by an informant-co-conspirator in a drug transaction. The sealed transcript of a hearing held without the presence of defense counsel revealed that the witness' fears of self-incrimination centered on the possibility

that the defense would probe matters other than those relevant to the instant prosecution. The Fifth Circuit held that these fears would not bar testimony relating to the witness' dealings with the appellant, and that therefore the grant of privilege was too broad.

■ We read these cases, together with *Lacouture, Johnson, Bowles* and similar cases, as establishing the principle that the trial judge must make an appropriate inquiry into the basis of the privilege claimed by the witness, and may not permit the witness to refuse to testify where a narrower privilege will adequately protect him. Nevertheless, inquiry into the scope of privilege asserted, in particular by a *virtual defendant* like Ugaro, is limited by the Fifth Amendment, *see United States v. Lacouture, supra,* 495 F.2d at 1240–41, and the court may not force the witness to *prove* that he will in fact incriminate himself by testimony. Moreover, in assessing the assertion, the trial judge may rely on his own perceptions of the evidence in the case:

> "We find no merit in [the appellant's] assertion that the court erred in *supposing* that [the witness'] testimony might actually tend to incriminate him. A trial judge may appraise a claim of privilege in light of his personal perception of the peculiarities of the case and should not be overruled unless it is perfectly clear that the witness is mistaken and that the answers cannot possibly incriminate." *Hoffman v. United States,* 341 U.S. 479, 487–488, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

*United States v. Johnson, supra,* 488 F.2d at 1209 (emphasis added). *See also, Bowles v. United States, supra,* 142 U.S.App.D.C. at 31–32, 439 F.2d at 541–42.

■ In the present case, before the trial started the district court, which was somewhat familiar with the case from a suppression hearing it had conducted some three months earlier, appointed special counsel for Ugaro who consulted with Ugaro, informed him of his Fifth Amendment

rights, and conducted a hearing outside the jury's presence regarding Ugaro's assertion of testimonial privilege. The special counsel reported to the court, "I have had two opportunities to confer with Mr. Hungaro [*sic*] for an extended period and have satisfied myself that there is an adequate basis in fact and in law for his claim of privilege."[9] Virtually the only relevant matters about which Ugaro might have been questioned concerned his being the possible source of the heroin found in the car. Any questions relating to the rental of the car would, in fact, have been directed toward this same end. In view of the limited nature of the questions that might have been asked him, the inquiry actually conducted by the trial judge in this case was sufficient, and the privilege recognized was not overbroad. That the court's acceptance of Ugaro's Fifth Amendment claim was well founded in the record is evident from Reese's testimony that Ugaro was a user of heroin (Tr. 80) and that Ugaro had loaned him the car in which the heroin was found in the glove compartment. Reese was defending on the claim that the heroin had been placed in the car by some person before the car was loaned to him by Ugaro. Thus it was to Ugaro that Reese's defense pointed, and it did so in a manner that would implicate Ugaro in criminal activity, even if he only admitted he had loaned the car to Reese.

The decision by Chief Judge Gardner in *Isaacs v. United States,* 256 F.2d 654 (8th Cir. 1958), is instructive on the breadth of the privilege. It extends to instances where the testimony the Government seeks may "tend to criminate." As Chief Justice Marshall stated in *United States v. Burr,* 25 Fed.Cas. 38, 40 (1807), *quoted in* 256 F.2d at 658:

> If a direct answer to [a question] may criminate himself, then [the witness] must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a

---

9. Tr. 48. *See* note 13 *infra.*

disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims. . .

. . . Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself.

It is thus clear the court properly ruled that Ugaro had a valid right under the Fifth Amendment to refuse to testify.

▮▮▮▮ The trial judge was likewise within his discretion in attributing little weight to appellant's post-trial assertion that Ugaro was then prepared to testify to some matters relevant to the case.[10] When

questioned by the court, Ugaro asserted a broad privilege.[11] The trial court's statement that Ugaro must testify, if at all, to the "whole thing," [12] recognized the limited nature of the matters to which Ugaro might be asked to testify and the rule that a witness may not testify as to the broad outlines of a matter and then assert a privilege as to the particulars. *See, e. g., Rogers v. United States*, 340 U.S. 367, 373, 71 S.Ct. 438, 95 L.Ed. 344 (1951); *United States v. Johnson, supra*, 488 F.2d at 1210. A subsequent exchange between the district court and the parties makes it clear that this was their understanding of the facts and the law.[13] In light of these considerations, the district court correctly recognized Ugaro's Fifth Amendment privilege to decline to testify.[14]

10. Tr. 5.

11. Tr. 48.

12. Tr. 6.

13. MR. HURLEY [Counsel for Ugaro]: Your Honor, I advised the Court this morning that I would confer with Mr. Hungaro [*sic*] yesterday and that it was his position yesterday that he did not wish to testify in this matter.

I have conferred with him today again, approximately at noon-time, and this is still his position that he does not wish to testify as a witness in this case. I have advised him and I am sure the Court will want to do so also.

THE COURT: I take it this is on the basis of the Fifth Amendment rights.

MR. HURLEY: That is correct, Your Honor. I have advised him of his Fifth Amendments rights not to testify if he wishes not to testify, and he wishes to take advantage of those rights.

THE COURT: Very well, Mr. Hungaro, just for the record, you have been brought down on a writ ad testificundum from New York for the purpose of testifying here today. You are required to testify unless you want to rely upon your Fifth Amendment rights, which means that you may insist on maintaining your privilege not to testify or you can waive that right.

Which do you wish to do?

MR. HUNGARO: I still insist upon it, Your Honor.

THE COURT: This is on the grounds that it may tend to incriminate you?

MR. HUNGARO: Yes, that is correct.

MR. ADDIS: So the record may be complete, Your Honor, I have had two opportuni-

ties to confer with Mr. Hungaro for an extended period, and I have satisfied myself that there is an adequate basis in fact and in law for his claim of privilege.

THE COURT: Yes, I assume that there is.

MR. HURLEY: That is correct.

MR. BAYLES [Counsel for appellant]: Well, may the record show that I understood that Mr. Hungaro would have testified to certain matters which I would submit to the Court were not relevant to self-incrimination, but only tending to corroborate certain events that took place in the state of New Jersey.

THE COURT: *Well, of course, if he took the stand, he would be subjecting himself to cross-examination.*

MR. ADDIS: That's right.

THE COURT: And there is no such thing as a limited right. He either does or he doesn't, so you have your exception and we will grant you the privilege of refusing to testify on the grounds of your Fifth Amendment rights.

Tr. 47–49 (emphasis added).

14. Appellant also argues that it was plain error for the district court to fail to instruct the jury that it should draw no inference from the non-appearance of Ugaro. This contention is precluded by the *en banc* decision of this court in *Bowles v. United States, supra*, 142 U.S.App. D.C. at 32, 439 F.2d at 542, on substantially identical facts. The court there noted that it would have been error to refuse a requested instruction, but that defense counsel might have valid tactical reasons for declining to make such a demand.

The court noted in a footnote that the defense in that case might have felt less need for

## III.

At his sentencing hearing appellant made an oral motion for a new trial on the ground that Ugaro had not testified earlier because he had been "misled and, in a sense, threatened by certain prosecutors" in other jurisdictions, and was now prepared "to give a deposition and possibly be a witness."[15] The district court denied the motion without comment. Appellant challenges this ruling on the ground that the district court's inquiry into the basis of the motion was insufficient. We find appellant's challenge to be inadequately supported.

A motion for a new trial is governed by Fed.R.Crim.Proc. 33, and if made, as here, more than seven days after the verdict,[16] may be based only on newly discovered evidence. A motion for a new trial is committed to the sound discretion of the trial judge, and should be reversed only for abuse or misapplication of the law. *Holt v. United States*, 218 U.S. 245, 251, 31 S.Ct. 2, 54 L.Ed. 1021 (1910) (Holmes, J.); *United States v. White*, 168 U.S.App.D.C. 309, 514 F.2d 205 (1975) (per curiam); *United States v. Anderson*, 165 U.S.App.D.C. 390, 406, 509 F.2d 312, 328 (1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975). The burden of proof that a new trial is justified rests with the appellant, and the burden is heavier when the motion is made beyond the first seven days. *United States v. Anderson, supra*, 165 U.S.App.D.C. at 405, 509 F.2d at 327; *Brodie v. United States*, 111 U.S.App.D.C. 170, 172–3, 295 F.2d 157, 159–60 (1961). Standards for ruling on a motion for a new trial or the basis of newly discovered evidence have been established by this court:

"The trial court has a broad discretion as to whether a new trial should be granted because of newly discovered evidence, and its action will not be disturbed on appeal unless an abuse of that discretion appears." To obtain a new trial because of newly discovered evidence (1) the evidence must have been discovered since the trial; (2) the party seeking the new trial must show diligence in the attempt to procure the newly discovered evidence; (3) the evidence relied on must not be merely cumulative or impeaching; (4) it must be material to the issues involved; and (5) of such nature that in a new trial it would probably produce an acquittal. *Thompson v. United States*, 88 U.S.App. D.C. 235, 236, 188 F.2d 652, 653 (1951), *quoted in United States v. White, supra*, 168 U.S.App.D.C. at 311, 514 F.2d at 207.

There is no question that interference by prosecutors with a defendant's ability to call witnesses is a proper ground for a new trial, *United States v. Bell*, 165 U.S.App. D.C. 146, 160–63, 506 F.2d 207, 221–24 (1974), or for other post-conviction relief, *see United States v. Smith*, 156 U.S.App. D.C. 66, 478 F.2d 976 (1973); *Bray v. Peyton*, 429 F.2d 500 (4th Cir. 1970). The evidence proffered by appellant in support of his motion, however, falls far short of that necessary for us to disturb the trial court's exercise of discretion. Appellant's counsel simply made the unsworn assertion that Ugaro had spoken with the appellant and told him that Ugaro would "like to give a deposition and possibly be a witness." There was no credible indication that the testimony would have been sufficiently material or probative to require a new trial, or "would probably [have] produced an acquittal." There was, for example, no sworn affidavit that another person had confessed

an instruction because the existence of the witness was corroborated, 142 U.S.App.D.C. at 32 n. 6, 439 F.2d at 542 n. 6. Similarly, in the present case the existence of Ugaro was undisputed. Moreover, the court gave a general neutralizing instruction that the jury "not guess or speculate as to what other people who have not testified might have said had they been here and testified before you." Tr. 26. This involved the substance of counsel's request without naming Ugaro. On these facts

the defense might reasonably have decided not to seek a more specific instruction, and it was not plain error to fail to give such an instruction *sua sponte*.

15. Sentencing Tr. 13.

16. Trial was held and the verdict returned on March 31, 1976, and the oral motion was made at the June 2, 1976, sentencing hearing.

to the crime, *see DeBinder v. United States,* 112 U.S.App.D.C. 343, 303 F.2d 203 (1962). There was in fact no indication as to the nature of Ugaro's expected testimony or deposition, and Ugaro's deposition alone would have been inadmissible hearsay insufficient for the granting of a new trial motion.

Nor was there a sufficient indication that the "evidence" had in fact been discovered since trial, or that appellant had exercised due diligence in procuring the information. Appellant's counsel simply stated that Ugaro had been "misled and, in a sense threatened by certain prosecutors" in New York. There was no credible evidence that prose-

cutors had in fact interfered with Ugaro's testimony, *cf. United States v. Bell, supra* (sworn affidavit that prosecutors had coerced witnesses through plea bargain not to testify for appellant); *Bray v. Payton, supra* (uncontradicted evidence that prosecutors had caused arrest of witness in violation of state law), or that any such "interference" was not previously known to appellant. We find no reason to disturb the district court's exercise of discretion in denying the motion for a new trial.

■■■ Appellant's challenges to the search and seizure of the items in the automobile [17] and the district court's exclusion of certain documentary evidence [18] warrant

17. Appellant argues that the warrantless search of the car, when the heroin was found in the glove compartment, violated the Fourth Amendment's prohibition of unreasonable searches and seizures. This contention is completely without merit. The automobile, a late model rental car, was stopped in a high crime neighborhood at night. A large quantity of money and suspected numbers slips were observed in plain view when the glove box door fell open. The officers acted in a completely reasonable manner in moving the car to the police station, impounding it and conducting an inventory search. *See South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

18. Appellant argues that the district court committed reversible error when it excluded from evidence the contents of the car rental agreement on the ground that it was irrelevant and inadmissible hearsay when proffered through the arresting officer or the accused. Appellant contends that the document was admissible to corroborate his testimony that Ugaro was one of the lessees of the car and that it had been rented and, in turn, loaned to appellant only a short time before his arrest. Corroborative evidence, however, must still satisfy other evidentiary requirements. The document could have been admitted for such purposes had a proper foundation been laid for its introduction. But failing such proof, it was inadmissible and the court properly so ruled.

Appellant further argues that the document was within the "business records" exception, and that in any event this court cannot consider the hearsay ground for exclusion since the trial court "expressly" rejected it. A review of the record shows that the hearsay objection was argued before the district court, and it is by no means clear that it was rejected. *See* Tr. 18–19, 99–105. We recognize that the trial court has broad discretion in determining

whether documents otherwise admissible as business records are sufficiently trustworthy, *United States v. Page,* 544 F.2d 982, 987 (8th Cir. 1976), and the district court could have admitted the rental agreement under the business records exception, Fed.R.Evid. 803(6), had a proper foundation been laid. We cannot say, however, that the court's decision to exclude this evidence constitutes reversible error. The agreement offered as Defendant's Exhibit 1 was a duplicate original (carbon copy) of an agreement purportedly executed by the car rental company through its agent (employee) with the "Customer . . . Toni M. Westry." The document also bore the purported signature of "Additional Customer . . . Roger Ugaro." The proffered document was obtained from Reese, who was not a party to the agreement at the time of his arrest on the street. In *United States v. Watkins, supra,* 171 U.S.App.D.C. at 160–1, 519 F.2d at 297–7, we held that a rental receipt in the possession of the lessor (accused) of an apartment was inadmissible as hearsay "for any purpose whatsoever, through a witness other than the declarant", and we find that decision persuasive here. *Compare United States v. Pfeiffer,* 539 F.2d 668 (8th Cir. 1976) (delivery receipts received through regular business channels and maintained by witness in regular course of shipper's business held properly admitted, even though only testimony as to the documents' reliability was offered by the recipient of the documents, rather than by their preparer; the serial numbers on the receipt corresponded to those on shipper's bill of lading); *United States v. De Georgia,* 420 F.2d 889 (9th Cir. 1969) (computer records of automobile rental firm admissible to show allegedly stolen car was not rented). The appellant could, of course, have attempted to establish a foundation for the admission of the rental agreement by calling the custodian of the company's business records, but no such testimony was sought.

little discussion. We find the conviction to be without reversible error, and therefore affirm.

*Judgment accordingly.*

The more liberal admission policy on hearsay evidence incorporated by the new Federal Rules of Evidence, which became effective subsequent to *Watkins*, might have been the predicate of a ruling by the district court in the exercise of its discretion in favor of admission pursuant to Rule 804(b)(5), "Hearsay Exceptions." However, we are not prepared on this record to insist that admission was mandatory on the district court. There was no claim or showing that the agreement was more probative than any other evidence the defendant "[could] procure through reasonable means." Since we cannot say that the document on its face is of such reliability as to establish facts that are unquestionable, it would exceed our province to use Rule 804(b)(5) as a basis of reversal.

The Government's contention that the exclusion of the rental agreement was in any event harmless error is not without force, since defendant's evidence that the car had been rented, and that Ugaro had let him use the car to drive from New Jersey to Virginia, was neither contradicted nor attacked in prosecution argument to the jury. On the other hand, the jury did ask to see the rental agreement, and while no one can be confident why, we cannot ignore the reality. Reese's contention that he had just casually borrowed the car from Ugaro to go to Virginia, however, would have been undercut by admission of the rental agreement because it stated that the car was to "be used only in the States of N.J. to Va."