**UNITED STATES of America**

v.

**Dennis E. PRYBA, Barbara A. Pryba, Jennifer G. Williams, and Educational Books, Inc.**

**Cr. No. 87–00208–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Jan. 20, 1988.

Lawrence Leiser, Asst. U.S. Atty., Alexandria, Va., for U.S.

Plato Cacheris, Washington, D.C., for Jennifer Williams.

MEMORANDUM OPINION

ELLIS, District Judge.

*Introduction*

After eight days of trial on the issues of guilt,[1] a jury convicted Jennifer Williams and three co-defendants of various violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, and interstate transportation of obscene material, 18 U.S.C. § 1465.[2] More specifically, defendant Jennifer Williams was convicted by the jury of (1) being associated with or employed by an "enterprise"[3] and conducting or participat-

---

**1.** The trial was bifurcated. The issues of guilt were tried first to the jury and then, after verdicts of guilty on the RICO and obscenity counts, the forfeiture issues were tried to and decided by the same jury. *See United States v. Conner,* 752 F.2d 566, 569, 575 (11th Cir.) (noting that a bifurcated procedure had been followed below), *cert. denied,* 474 U.S. 821, 106 S.Ct. 72, 88 L.Ed.2d 59 (1985); *United States v. Cauble,* 706 F.2d 1322, 1348 (5th Cir.1983) (advising that for future trials, forfeiture issue should be withheld from jury until after it has returned a general verdict), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). Altogether, both phases of the trial consumed a total of eleven days. Defendant Williams elected to rest following the government's evidence on the issue of guilt. She also elected not to participate in the forfeiture stage of the trial, choosing instead to forfeit voluntarily all the corporate offices she held in the various Pryba

companies that comprised the RICO "enterprise."

**2.** The twelve count indictment against defendants included three RICO counts, seven counts of interstate transportation of obscene material and two counts of tax fraud (26 U.S.C. § 7206). Defendant Williams was not named in the tax fraud counts. She was convicted on two of the three RICO counts and all seven of the counts charging interstate transportation of obscene material. Although the jury found that one of the magazines listed in Count 9 of the indictment was not obscene and was unable to reach a verdict as to two of the magazines listed in Count 10, a guilty verdict was rendered on both counts because they involved other magazines the jury did find to be obscene.

**3.** Section 1961(4) defines "enterprise" to include "any individual, partnership, corporation, asso-

ing, directly or indirectly, in the conduct of such enterprise through a pattern of racketeering activity, 18 U.S.C. §§ 1961(4), 1962(c); (2) conspiring to use or invest income derived from a pattern of racketeering activity in the enterprise, 18 U.S.C. § 1962(d); and (3) seven counts of transporting obscene material in interstate commerce for sale or distribution, 18 U.S.C. § 1465.

Defendant Williams moved for a judgment of acquittal at the conclusion of the government's case and again after the adverse verdict. The matter was briefed and argued orally, and this Memorandum Opinion records the Court's reasons for denying the motions.

### The Standard for Judgment of Acquittal

A criminal defendant seeking a judgment of acquittal in the face of an adverse jury verdict must meet a rigorous standard. In the words of the Supreme Court, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Cases echoing this principle are legion,[4] as are its various formulations. Among the most frequently cited and illuminating are those of the District of Columbia Circuit. In *United States v. Reese*, 561 F.2d 894 (1977), that court stated the principle in these terms:

It is only when there is *no evidence* upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that a motion for judgment of acquittal may be granted.

*Id.* at 898 (emphasis added); *see also United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir.1982). And in *United States v.*

*Peterson*, 509 F.2d 408 (1974), the D.C. Circuit chose the following formulation:

To grant a motion for acquittal, the court must find that when viewed in the light most favorable to the government, the evidence is such that a reasonable juror *must* have reasonable doubt as to the existence of any of the essential elements of the crime.

*Id.* at 411. Finally, in *United States v. Singleton*, 702 F.2d 1159 (D.C.Cir.1983), the court observed that, "If the evidence reasonably permits a verdict of acquittal or a verdict of guilt, the decision is for the jury to make." *Id.* at 1163 (quoting *Curley v. United States*, 160 F.2d 229, 237 (D.C.Cir.), *cert. denied*, 331 U.S. 837, 67 S.Ct. 1512, 91 L.Ed. 1850 (1947)).

Here, defendant Williams specifically attacks the sufficiency of the evidence on "guilty knowledge." She contends that acquittal is required because the evidence does not show that she acted with "the requisite criminal intent." On this point, the Fourth Circuit has framed the standard for a motion for acquittal as follows:

In determining whether there was sufficient evidence regarding "knowledge" to sustain the guilty verdicts, the court must consider whether any rational trier of fact could have found the existence of knowledge beyond a reasonable doubt.

*United States v. Zandi*, 769 F.2d 229, 235 (1985); *see also United States v. Steed*, 674 F.2d 284, 286–89 (4th Cir.), *cert. denied*, 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 68 (1982).

In sum, defendant Williams' burden on a motion for acquittal is a formidable one; she must show that viewing the evidence in the light most favorable to the government, there is no substantial evidence to support the verdicts. To sustain the verdict, the court need only find that the record includes evidence from which a rea-

---

ciation, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." In this case, the enterprise consisted of individuals, the Prybas and Williams, together with the various corporations the Prybas established, as the government's evidence showed, for the purpose of insulating them from criminal liability. For a

more complete description of the enterprise, *see infra* note 8 and appendix.

4. *See, e.g., United States v. Jones*, 735 F.2d 785, 790, 791 (4th Cir.), *cert. denied*, 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984); *United States v. Slocum*, 708 F.2d 587, 594 (11th Cir. 1983).

sonable person could find guilt; it need not find that the evidence compels guilt and wholly excludes innocence. "It is not necessary [to support a conviction] that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence." *United States v. Bell*, 678 F.2d 547, 559 (5th Cir.1982), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983); *see also United States v. Slocum*, 708 F.2d 587, 594 (11th Cir.1983). With this summary of the standard as a lens, we focus next on an examination of the evidence.

### The Evidence

A review of the record compels the conclusion that there is ample and substantial evidence from which reasonable jurors could have found Williams guilty. At most, defendant Williams has shown only that the evidence does not exclude innocence. She has not shown that there was no evidence, viewed in the light most favorable to the government, to support the verdicts. Nor has she shown that the government's case, as she claims, relied "totally on speculation and inferential evidence." ·

First, there was ample evidence to support a finding that Williams was aware of the sexually explicit nature of the materials that Dennis and Barbara Pryba's corporations were selling. The record reflects that in the 1970s, the Prybas were engaged in the business of selling and distributing sexually explicit materials. Defendant Williams, sister of co-defendant Barbara Pryba and sister-in-law of co-defendant Dennis Pryba, began working for the Prybas' various business entities in the late 1970s. During this period and well into the 1980s, Williams worked on a daily basis at the Prybas' warehouse in Maryland. Evidence adduced at trial showed that sexually explicit materials were stored at the warehouse and that the warehouse was relatively small. The jury could reasonably have concluded that the sexually explicit nature of the warehouse inventory must have been apparent to anyone working there. Moreover, the jury could reasonably have found that the sexually explicit nature of the materials shipped in interstate commerce and sold by the enterprise was evident from the invoices Williams handled as an officer and bookkeeper of the Prybas' corporations.[5] Finally, the evidence indicated that the corporations and their employees were regularly prosecuted and convicted for sale and distribution of obscene material.[6] Each of these, in itself, was

5. Numerous government exhibits, *see, e.g.*, Nos. 56, 59, 59-A, established that invoices frequently included the sexually explicit titles of materials, and from this the jury could reasonably have concluded that defendant Williams understood the nature of the products the enterprise sold.

6. Educational Books, Inc., one of the Pryba corporations that comprised the RICO "enterprise," was convicted fifteen times in the Circuit Court

of Fairfax County during 1981–83 for selling or distributing obscene material. A review of the material involved in those convictions supports the jury's conclusion that defendant Williams, given her relationship to the Prybas and her role as bookkeeper and officer for the enterprise corporations, knew well that she was involved in an enterprise that sold and distributed sexually explicit material.

| | Date | | | | Obscene Material Involved in Conviction |
|---|---|---|---|---|---|
| (A) | May 11, 1981 | – | Ct. 1 | – | Film, "Anal Ecstasy" |
| | | | Ct. 2 | – | Film, "Cunt to Cunt" |
| | | | Ct. 3 | – | Film, "Icing on My Cake" |
| | | | Ct. 4 | – | Film, "Seka's Fulfillment" |
| | | | Ct. 5 | – | Film, "Fuck Her Ass" |
| | | | Ct. 6 | – | Film, "The Voyeur Gets His" |
| | | | Ct. 7 | – | Film, "Seduction of the Delivery Boy" |
| | | | Ct. 8 | – | Film, "Rape" |
| | | | Ct. 9 | – | Film, "Up the Chute" |
| (B) | May 18, 1982 | – | Ct. 1 | – | Film, "The Pleasure Shoppe" |
| | | | Ct. 2 | – | Magazine, "Girls Who Eat Cum No. 2" |

| Date | | | Obscene Material Involved in Conviction |
|------|---|---|------|
| (C) | May 18, 1982 | Ct. 1 | Magazine, "Deviations" |
| | | Ct. 2 | Magazine, "Cum Again" |
| | | Ct. 3 | Magazine, "Swedish Erotica No. 4" |
| | | Ct. 4 | Magazine, "Swedish Erotica No. 27" |
| (D) | June 15, 1982 | Ct. 1 | Magazine, "Sucking Young Girls" |
| (E) | June 15, 1982 | Ct. 1 | Magazine, "Rampage" |
| (F) | June 15, 1982 | Ct. 1 | Magazine, "Fucking Blondes" |
| | | Ct. 2 | Magazine, "Sweet Meats" |
| (G) | June 15, 1982 | Ct. 1 | Magazine, "Swedish Erotica No. 12" |
| | | Ct. 2 | Magazine, "Swedish Erotica No. 19" |
| | | Ct. 3 | Magazine, "Silky" |
| (H) | June 15, 1982 | Ct. 1 | Magazine, "Trio" |
| | | Ct. 2 | Magazine, "Teenage Sex" |
| | | Ct. 3 | Magazine, "American Erotica" |
| (I) | June 15, 1982 | Ct. 1 | Magazine, "Hot Pepper" |
| | | Ct. 2 | Magazine, "Janet Anal Sex Queen" |
| | | Ct. 3 | Magazine, "Sexercise" |
| (J) | Aug. 12, 1983 | Ct. 1 | Magazine, "Voluptua No. 5" |
| | | Ct. 2 | Magazine, "Sex Master" |
| | | Ct. 3 | Magazine, "American Erotica" |
| | | Ct. 4 | Magazine, "Cum Pumpers" |
| | | Ct. 5 | Magazine, "Suck V–1 No. 1" |
| | | Ct. 6 | Magazine, "Unreal People" |
| | | Ct. 7 | Magazine, "John Holmes (No. 1 Cock)" |
| | | Ct. 8 | Magazine, "Tight Assed Blond" |
| | | Ct. 9 | Magazine, "Baby" |
| (K) | May 16, 1983 | Ct. 2 | Magazine, "Nympho Housewives" |
| | | Ct. 3 | Magazine, "Luv It" |
| | | Ct. 5 | Magazine, "Sensua" |
| | | Ct. 7 | Magazine, "French Pussy" |
| (L) | June 6, 1983 | Ct. 1 | Magazine, "Seke Special 1981" |
| | | Ct. 2 | Magazine, "Cunts Who Put Out" |
| | | Ct. 3 | Magazine, "Hard Core" |
| | | Ct. 4 | Magazine, "Taboo" |
| | | Ct. 5 | Magazine, "Girls Who Eat Cum" |
| | | Ct. 6 | Magazine, "Blondes Have More Cum No. 2" |
| | | Ct. 7 | Magazine, "The Best of Cum" |
| | | Ct. 8 | Magazine, "Swedish Erotica No. 30" |
| | | Ct. 9 | Magazine, "Bi Guys and A Girl" |
| | | Ct. 10 | Magazine, "Connoisseur Eries No. 2" |
| (M) | Dec. 2, 1983 | Ct. 2 | Film, "Margaret's Target" |
| | | Ct. 3 | Film, "Anally Yours" |
| | | Ct. 4 | Film, "Two on a Big Stick" |
| | | Ct. 5 | Film, "Black Hammer" |
| | | Ct. 7 | Film, "Cum on Girls No. 4" |
| | | Ct. 8 | Film, "Cum on Girls No. 6" |
| (N) | Jan. 27, 1984 | Ct. 1 | Film, "Houseboat, Pt I" |
| | | Ct. 2 | Film, "In and Out, Pt I" |
| | | Ct. 3 | Film, "175 Second Shift" |
| | | Ct. 4 | Film, "Country Girls" |
| | | Ct. 5 | Film, "Jungle Full of Ass" |
| | | Ct. 6 | Film, "Double Cocked" |
| | | Ct. 7 | Film, "The Banquet" |
| | | Ct. 8 | Film, "Three for Thrills" |
| | | Ct. 9 | Film, "Roll Her Derby" |
| | | Ct. 10 | Film, "Mouth to Mouth" |
| (O) | June 18, 1985 | Ct. 1 | Film, "Two's Company, Three's a Crowd" |
| | | Ct. 2 | Film, "Big Tease '14'" |
| | | Ct. 3 | Film, "Incest Delight" |
| | | Ct. 4 | Film, "Anal Trio" |

sufficient to put Williams on notice regarding the sexually explicit nature of the merchandise in which her employers were dealing.[7] Taken together, they compel the conclusion that the jury's verdict with respect to Williams' knowledge of the materials is amply supported by record evidence.

Williams continued to work as the RICO enterprise's sole bookkeeper until mid–1985.[8] Acts confirming her knowing participation in this enterprise include: (1) signing the annual report for Suburban News, Inc. on February 28, 1978, and listing herself as the director, president, vice president, secretary and treasurer; (2) filing an annual report as president for M Street Enterprises on January 16, 1978, and listing Dan Gottesman as the secretary of the corporation knowing that he did not serve in that capacity; (3) signing a similar document as president of M Street Enterprises in 1979 and listing herself as director, president, vice president, secretary and treasurer; (4) using the signature stamps of John R. Jones and Dan Gottesman when she knew that they were not current officials of the Prybas' corporations; (5) signing a property tax return for Suburban News in 1983 as a corporate officer and affirming under penalty of perjury that she was the president, vice president, secretary, treasurer and director of the corporation; (6) filing an application as president and secretary for authority to transact business in Virginia on behalf of Video Shop, Ltd. and indicating that she was the sole director and stockholder when she knew that the corporation was owned by Dennis Pryba, Barbara Pryba or Barbara Pryba's father; (7) signing as president of Video Shops, Ltd. in 1984, 1985 and 1986 and declaring herself to be the president and sole director; (8) signing leases as the president of Video Shop, Ltd.; and (9) signing as an officer on corporate tax returns for B & D Corporation.[9]

The government also presented the testimony of an Internal Revenue Service agent who related events occurring in connection with the IRS' attempt to collect delinquent taxes from B & D Corporation. Williams represented that she was the president of B & D and that she had authority to pay the obligations of the corporation.

From all this evidence, the jury could reasonably have inferred that Williams, together with the other defendants, actively, knowingly and willfully participated in and furthered the interests of the enterprise. She assisted the Prybas in distributing obscene material by providing bookkeeping services. It strains credulity to argue that she was not aware that the enterprise was in the business of buying and selling sexually explicit magazines and videos in interstate commerce. Further, the jury here could reasonably and easily have concluded that Williams used her name and those of others to hide the identities of the true owners of the enterprise corporations, the

Ct. 5 – Film, "No. 89, A Fair Fare"
Ct. 6 – Film, "S.E. 542"
Ct. 7 – Film, "P.G. 103"
Ct. 8 – Film, "Loaded No. 155"

---

7. It is sensibly settled that conviction under 18 U.S.C. § 1461 *et seq.* does not require proof that the defendant knew the material was legally obscene. It is enough to show that defendant knew generally that the material was sexually oriented or sexually explicit. *Hamling v. United States,* 418 U.S. 87, 119–24, 94 S.Ct. 2887, 2908–11, 41 L.Ed.2d 590 (1974); *see also Rosen v. United States,* 161 U.S. 29, 41–42, 16 S.Ct. 434, 438–39, 40 L.Ed. 606 (1896); *United States v. Cohen,* 583 F.2d 1030, 1042 (8th Cir.1978); *United States v. Linetsky,* 533 F.2d 192, 204 (5th Cir.1976); *United States v. Sulaiman,* 490 F.2d 78, 79 (5th Cir.), *cert. denied,* 419 U.S. 911, 95 S.Ct. 192, 42 L.Ed.2d 152 (1974).

8. A vivid sense of defendant Williams' role in the RICO enterprise can be obtained from government exhibit No. 132, a portion of which is attached as an appendix to this memorandum. This exhibit graphically depicts the Pryba's RICO enterprise and the extent of defendant Williams' involvement in it. Note that all the stock of the various corporations was owned by the B & D Corporation and the Prybas owned all the stock of the B & D Corporation.

9. This listing is not intended to be exhaustive. The transcript, when it becomes available, may disclose other evidence indicating defendant Williams' participation in, and knowledge of, the enterprise and its racketeering activity.

Prybas. In short, the evidence is compelling, if not conclusive, that a conspiracy existed in connection with a RICO enterprise engaged in the interstate transportation and sale of obscene material. Equally compelling is the evidence of defendant Williams' strong connection with and involvement in this RICO enterprise. Such evidence is plainly sufficient to convict, for " '[o]nce the existence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though *the connection is slight,* is sufficient to convict him with knowing participation in the conspiracy.' " *United States v. Laughman,* 618 F.2d 1067, 1076 (4th Cir.) (quoting *United States v. Dunn,* 564 F.2d 348, 357 (9th Cir.1977) (emphasis in original)), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). Accordingly, the jury here had ample evidence to conclude (i) that Williams knowingly aided the Prybas in transporting obscene material for the purpose of sale and distribution; (ii) that she was employed by a RICO enterprise and participated in its affairs through a pattern of racketeering activity; and (iii) that she conspired to violate RICO by knowingly acting in concert with the Prybas in using or investing proceeds from racketeering activity in the enterprise. *See* 18 U.S.C. §§ 1465, 1962 (a), (c), (d).

In support of her claim that the evidence was insufficient, Williams cites *United States v. Casperson,* 773 F.2d 216 (8th Cir.1985), in which the court reversed a bookkeeper's convictions for fraud and conspiracy. Analysis shows *Casperson* is inapposite. There, the defendant was charged with fraud as well as conspiracy to defraud. Proof of intent to defraud was therefore essential to conviction on the substantive fraud counts. The only facts to indicate the defendant's involvement in the alleged unlawful plan, however, were that he had performed some bookkeeping functions for the corporation in question, had attended promotional meetings and on one occasion had explained the corporation's program to a potential investor, was a signatory on the corporation's checking account and was referred to in documents as the corporation's vice president. The defendant, whose tenure with the corporation spanned less than one year, did not participate in the development of the fraudulent scheme, made no administrative decisions, had never met the man who masterminded the scheme, did not write checks for the corporation and did not function as a vice president. On these facts, the court found that the level of the defendant's participation in the corporation's affairs was not sufficient to support an inference of an intent to defraud.

In sharp contrast, Williams in this case was deeply involved in the corporations' affairs for many years. She wrote checks and conducted other business, filed official documents and represented that she held offices in a number of the corporations. She assisted the Prybas in concealing their identities as the actual principals of the corporations. Unlike the activities of the defendant in *Casperson,* Williams' activities demonstrate "the knowing, affirmative cooperation" and involvement necessary to sustain her convictions under the obscenity and the RICO counts. *Casperson,* 773 F.2d at 221.

### Conclusion

Because the jury's verdict has a substantial basis in the evidence, defendant Williams' motion for a judgment of acquittal is denied. An appropriate order accompanies this opinion.

APPENDIX
(Excerpt of Government Exhibit 132)

B&D CORPORATION
(Secretary – J. Williams)
(Treasurer – J. Williams)

HOME VIDEO SALES, INC.
(Pres. – J. Williams)

VIDEO SHOP LTD, INC.
(Pres. – J. Williams)
(Dir. – J. Williams)

"M" STREET ENTERPRISES, INC.
(President – J. Williams)
(Director – J. Williams)

CROSSROAD BOOK, INC.

MARLBORO NEWS
(Secy. – J. Williams)
(Treas.– J. Williams)

EDUCATIONAL BOOKS, INC.

SUBURBAN NEWS, INC.
(Pres. – J. Williams)
(Dir. – J. Williams)
(V.P. – J. Williams)
(Secy. – J. Williams)
(Treas.– J. Williams)