UNITED STATES of America, Appellee,

v.

Tyrone N. WALKER, Appellant.

No. 95–3147.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 16, 1996.

Decided Nov. 8, 1996.

L. Barrett Boss, Assistant Federal Public Defender, argued the cause for appellant, with whom A.J. Kramer, Federal Public Defender, was on the briefs. Leigh A. Kenny, Assistant Federal Public Defender, Washington, DC, entered an appearance.

Anjali Chaturvedi, Assistant United States Attorney, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Roy W. McLeese, III, and Henry K. Kopel, Assistant United States Attorneys, Washington, DC, were on the brief.

Before: SILBERMAN, RANDOLPH, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Tyrone Walker was convicted of possession of over five grams of cocaine base with the intent to distribute. His appeal focuses on his challenge to the sufficiency of the evidence to support the conviction and the trial judge's aiding and abetting instruction. We affirm.

## I.

When District of Columbia police arrived at 1123 First Terrace to execute a search warrant, they discovered crack cocaine, marijuana, weapons, and drug paraphernalia spread throughout the third floor of the house. The largest concentration was found in one of the bedrooms (bedroom three). The police there found $2,621 in cash and plastic bags filled with $1,760 worth of crack, all nestled under the mattress of a waterbed. On the closet shelf sat a Sucrets box containing marijuana stems and seeds, a blackjack, and empty ziplock bags. A small hand scale and an array of empty bags littered the bedroom floor. Officer Derek Bell questioned appellant, who gave his name and referred to bedroom three as his bedroom.

The officers found appellant in one of the other bedrooms (bedroom one), along with Donnell Reed and Reed's girlfriend. Live ammunition, $870 in cash, plastic bags, and an electronic scale—all in plain view—were scattered around appellant. Reed told police that he lived in the house and admitted that the items in *that* room belonged to him. On the floor of a neighboring bedroom (bedroom two), in which five additional people were present, police recovered loose rocks of crack cocaine and ziplock bags containing both marijuana and rocks of cocaine. In the third floor bathroom, police found 61 ziplock bags filled with cocaine, with a retail value of $1,220, floating in the toilet and four more strewn about the floor near the bathtub.

Walker's defense rested on his contention that he was merely an innocent occupant of the house, with no responsibility for, or any knowledge of, the incriminating items found inside his bedroom—a room he confessed was his when he stayed over at the house, but that he claimed other individuals used, including some of the individuals found in bedroom two. Walker admitted general knowledge of the drug activities in the house, but he pointed to the individuals found in bedroom two as the perpetrators.

The government pursued two alternative theories upon which the jury could convict Walker under 21 U.S.C. § 841 (1994). It was claimed that Walker resided in bedroom three, and consequently exercised dominion and control over the drugs and paraphernalia—obviously intended for distribution—in that room. Alternatively, the government posited that appellant was guilty under the same provision, § 841, as Reed's aider and

abettor. *See* 18 U.S.C. § 2 (1994). The jury received instructions on both the principal and aider and abettor theories of liability. The jury rejected Walker's defense and convicted him without specifying which of the government's two theories of liability supported its verdict.

## II.

Appellant first claims that there was insufficient evidence to support his conviction for possession with intent to distribute. We apply the familiar deferential standard of review under which we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In so doing, we permit the government "the benefit of all reasonable inferences that may be drawn from the evidence." *United States v. Sutton*, 801 F.2d 1346, 1358 (D.C.Cir.1986).

It is undisputed that Walker "resided" in bedroom three. But appellant points out that it is also undisputed that at least four others used that room and that the drug paraphernalia found *in that room* was not in plain view so there was no reason for the jury to infer that he knew about the drugs, let alone possessed them with the intent to distribute. He relies particularly on two of our prior cases, *United States v. Thorne*, 997 F.2d 1504 (D.C.Cir.), *cert. denied*, 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 467 (1993) and *United States v. Watkins*, 519 F.2d 294 (D.C.Cir.1975).

In *Thorne*, we held that evidence that a defendant shared a bedroom with four others including his brother where drugs and drug paraphernalia were found in a closet was insufficient to support an inference that the defendant possessed the drugs. We emphasized that the drugs were not in plain view so there was no reason to conclude that the defendant knew about them. *See* 997 F.2d at 1510. We also noted, moreover, that a ledger of drug transactions found in the house containing the names of the other occupants of the house did not include the defendant's.

In *Watkins,* we reversed a conviction where the entirety of the government's evidence consisted of some books containing Watkins' name, which the police found in a closet, and Watkins' presence in the room in which police found the concealed drugs. *See Watkins,* 519 F.2d at 298.

We think our case is distinguishable in several critical respects. First, appellant was found in bedroom one (Reed's room), surrounded by drug paraphernalia in the open. Drugs were found all over the floor of another bedroom and in the bathroom. Appellant could not claim, as did the defendants in *Thorne* and *Watkins,* that he was innocent of any knowledge of drugs and drug paraphernalia possession in the house.

Second, the evidence here was sufficient for the jury to conclude that appellant was the *primary* occupant of bedroom three. Appellant himself told jurors of his admission to the police that he *lived* at 1123 First Terrace. Officer Bell testified that Walker referred to bedroom three specifically as his room, and Walker's mother told jurors that bedroom three belonged to Walker. Officers found identification for appellant, including a photo I.D., on top of the television set in bedroom three, a poster-size photo of appellant adorning the wall, and a shoe box holding Walker's personal papers (including a District of Columbia non-driver identification card) in the room. Appellant's name is even listed on the lease as one of the residents. Once a jury reaches the conclusion that Walker was the primary occupant of bedroom three the fact that the drugs and drug paraphernalia are stored away in the room does not tend to exculpate him. For it would be rather illogical for a user of the room to leave any material in the bedroom of the primary occupant under the assumption that such material would remain undetected by the primary occupant—at least absent a showing that the material was hidden in places not normally utilized.

We therefore are confident that the evidence is sufficient as to the possession with intent to distribute charge. But appellant contends that we must also independently evaluate the sufficiency of the aider and

abettor evidence. It is not at all clear, to be sure, exactly which evidence the government relies on to make out the charge of appellant's aiding and abetting Reed's possession. Appellant argues that the government may not claim that aiding and abetting is merely a subset of appellant's possession. *See United States v. White,* 1 F.3d 13, 16–17 (D.C.Cir. 1993) (suggesting that aiding and abetting passport fraud requires additional elements of proof than passport fraud), *cert. denied,* 510 U.S. 1111, 114 S.Ct. 1053, 127 L.Ed.2d 374 (1994). However, we need not decide which evidence, if any, supports the aiding and abetting theory, because the Supreme Court has recently determined in *Griffin v. United States,* 502 U.S. 46, 56–57, 112 S.Ct. 466, 472–73, 116 L.Ed.2d 371 (1991), that when a defendant is convicted of a crime based on alternative theories, and there is sufficient evidence to convict on one, it is unnecessary for a reviewing court to consider whether the evidence is sufficient on the alternative ground.

■ Still, *Griffin* left intact, if somewhat battered, the Court's earlier decision in *Yates v. United States,* 354 U.S. 298, 311–12, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957), which held that an independent legal error associated with one of two alternative theories is treated differently than an insufficiency of the evidence claim. In that regard, appellant argues that the trial judge's instruction to the jury was such an error because he, in effect, removed the element of intent from the crime of aiding and abetting. This sort of error, moreover, could not be regarded as harmless. *See United States v. Jones,* 909 F.2d 533, 538 (D.C.Cir.1990).

At one point in his instruction to the jurors, the judge informed them that:

It is *not* necessary that the defendant have had the *same intent* that the principal offender had when the crime was committed or that he have intended to commit the particular crime committed by the principal offender. (Emphases added).

Appellant rightly tells us that the trial court's statement is at odds with language in some of our cases, in which we have stated that an aider and abettor must have the "same intent" as a principal. *See United States v. Salamanca,* 990 F.2d 629, 638 (D.C.Cir.), *cert. denied,* 510 U.S. 928, 114 S.Ct. 337, 126 L.Ed.2d 281 (1993); *United States v. North,* 910 F.2d 843, 881 n. 11 (D.C.Cir.1990), *cert. denied,* 500 U.S. 941, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991).

■ The government's brief, although decidedly uncomfortable with and even critical of the footnote in *North* and our language in *Salamanca,* does not clearly indicate why appellant's reliance of those cases is misplaced. That seems to be because the government reads *North* and *Salamanca's* use of the phrase "same intent" as requiring an intent which is "matched"—which would mean that an aider and abettor must have *exactly* the same knowledge and disposition as the principal. But that is an overreading; no court has ever so held, as it virtually would eliminate aider and abettor liability. Appellant, ironically, has it right when, in defense of our "same intent" language, he points to cases that have instead used the term shared intent, *see, e.g., Nye & Nissen v. United States,* 336 U.S. 613, 620, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949); *United States v. Martiarena,* 955 F.2d 363, 366 (5th Cir. 1992); *see also United States v. Garrett,* 720 F.2d 705, 713 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1037, 104 S.Ct. 1311, 79 L.Ed.2d 708 (1984); *United States v. Raper,* 676 F.2d 841, 850–51 & n. 1 (D.C.Cir.1982), which suggests that the intent of the aider and abettor must be shown, in crucial respects, to overlap with (but not necessarily match) the criminal intent of the principal. For example, in *United States v. Edmond,* 924 F.2d 261, 267 (D.C.Cir.), *cert. denied,* 502 U.S. 838, 112 S.Ct. 125, 116 L.Ed.2d 92 (1991), we noted that if a jury thought an aider and abettor had premeditated a murder, but enlisted an executioner at the last possible moment, a jury "could consistently convict the abettor of first-degree murder while finding the actual perpetrator guilty only of [second-degree murder]."

The *North* case footnote upon which *Salamanca* relied, although it used the cryptic and somewhat ambiguous phrase "same intent," must be read as meaning no more than the traditional notion of *shared* intent because the note explicitly relied on *United*

*States v. Sampol*, 636 F.2d 621, 676 (D.C.Cir. 1980), and it did not purport to alter the principles we applied there. In *Sampol*, we had explained that an aider and abettor and a principal must have a "common design or plan," but the aider and abettor "need not perform the substantive offense, need not know its details, and need not even be present." *Id.* (internal quotation marks and citations omitted). And we explicitly recognized that once a common design is established, the aider and abettor is responsible not only for the success of the common design, but also for the probable and natural consequences that flow from its execution, even if those consequences were not originally intended. *See id.*[1]

When the district judge told the jury that they need not find that appellant had the "same intent" as Reed, we think, after examining his whole instruction, he was indicating only that the jury need not find a perfectly matched knowledge and intent. The trial judge began by telling jurors that an aider and abettor must "intentionally participate[ ] in the commission of a crime" and that they "must find that the defendant knowingly associated himself with the person who committed the crime, that he participated in the crime as something he wished to bring about, and that he intended by his action to make it succeed." The trial judge also told them that "some affirmative conduct by the defendant to help in planning and carrying out the crime is necessary." Read in their entirety, then, the instructions did not remove the

intent requirement from the jury's purview, as appellant asserts, but instead gave the jury adequate guidance on the requisite intent for aiding and abetting. Even if we concede, as we must, that "same intent" is imprecise and ambiguous, the surrounding language clarified the ambiguity. *See United States v. Childress*, 58 F.3d 693, 709 (D.C.Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 825, 133 L.Ed.2d 768 (1996).[2]

\* \* \* \* \* \*

■ Appellant's remaining arguments are of little moment. Appellant claims the trial judge abused his discretion in refusing to grant a mistrial after the government elicited allegedly improper hearsay. Officer Bell repeated a statement from Annette Reed, appellant's mother, to justify his decision not to arrest her that night.[3] The trial judge struck the statement from the record and instructed the jury to disregard it. The next morning, the judge again reminded jurors not to consider the testimony. We have no cause to doubt that the jury followed the court's curative instructions, therefore we do not believe the trial judge abused his discretion in denying the motion for a mistrial. *See United States v. Burroughs*, 935 F.2d 292, 295 (D.C.Cir.1991).

■ Appellant also contends that the trial judge should have declared a mistrial or held a post-trial hearing after discovering that a juror failed to disclose information at *voir dire*. Appellant scrutinizes the response of

1. Similarly, in *Salamanca*, although the opinion cites to the "same criminal intent" language from *North*, the court found insufficient evidence against Salamanca because he did not assist in the offense until *after* it was committed. The court noted that he was more likely an accessory after the fact, *see Salamanca*, 990 F.2d at 640, rather than an aider and abettor.

2. The latter clause in the judge's charge—"[the government need not show] that he have intended to commit the particular crime committed by the principal offender"—might be thought more troubling than the "same intent" language that appellant focuses on, but we think that the jury would likely focus on the judge's reference to the *particular* criminal act. That is, we think the jury would recognize the judge's effort to focus them on the fact that an aider and abettor "need not know [the substantive offense's] details," *Sampol*, 636 F.2d at 676 (citation omitted). In-

deed, the very next sentence in the instruction told jurors that "[a]n aider and abettor is legally responsible for the acts of other persons that are the natural and probable consequences of the crime in which he intentionally participates."

3. Specifically, Officer Bell told jurors that Ms. Reed "explained to me that she had no knowledge that her sons were doing drugs upstairs." The government argues that Ms. Reed's statement affected Bell's state of mind and was introduced solely to show its effect on him—not to prove its veracity—because whether it was true or false, it affected Officer Bell's beliefs. Used in that manner, contends the government, the statement did not constitute hearsay. This argument may well merit additional attention in the absence of a limiting instruction, but we believe the instruction stripped the statement of any prejudicial impact, regardless of its intended use at trial.

the jury foreman, who denied having "been accused" of a crime other than a traffic offense during the past 10 years. The foreman was charged with a misdemeanor 10 years and six months prior to responding to the question, but was not acquitted until nine years and nine months before *voir dire*. Because of the phrasing of the question, we doubt the juror's answer was improper at all, let alone sufficiently defective for appellant to clear the heightened thresholds of review we apply to the district court's denial of the request for a new trial, *see McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 555–56, 104 S.Ct. 845, 849–50, 78 L.Ed.2d 663 (1984); *North,* 910 F.2d at 904, and the denial of the request for a post-trial hearing, *see United States v. Boney,* 977 F.2d 624, 634 (D.C.Cir.1992).

Accordingly, appellant's conviction is therefore

*Affirmed.*