**UNITED STATES of America**

v.

**John DAVIS, Jr.**

**Criminal Action No. 11–10093–RGS.**

United States District Court,
D. Massachusetts.

Dec. 9, 2011.

Jeffrey Mark Cohen, United States Attorney's Office, Boston, MA, for United States of America.

Peter B. Krupp, Lurie & Krupp, LLP, Boston, MA, for John Davis, Jr.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

STEARNS, District Judge.

■ Defendant John Davis, Jr., who was convicted after a two-day jury trial of aiding and abetting a violation of 18 U.S.C. § 287, see 18 U.S.C. § 2, now moves for judgment of acquittal pursuant to Fed. R.Crim.P. 29(c).[1] Davis argues that "the evidence was insufficient to support a con-viction under the correct legal standard for aiding and abetting."[2] The motion will be *DENIED.*

There is no dispute that the evidence at trial established that Davis was a willing participant in a scheme to file a false 2008 federal tax return. Davis admitted to federal investigators that he had provided his name, address, telephone number, and social security number to the principal (whom he would not identify), that he had received and cashed a $7,019.75 tax refund check,[3] and that he had turned the proceeds over to the principal (who had filed the fraudulent tax claim), but for the $1,000 that he had kept as payment for the use of his identity.[4]

The legal issue arises from the subtleties of the distinction between substantive offense liability and liability as an aider and abettor. Although the indictment was brought under the general false claims statute, 18 U.S.C. § 287, it specified the false claim that was filed as "a 2008 federal income tax return Form 5405." Given the language of the indictment, the jury was instructed that to convict Davis of the substantive offense, it would have to find that he knew that the false claim "in-

1. Davis was acquitted of a substantive violation of Section 287. The indictment charged in relevant part that Davis "did unlawfully and knowingly make and present to the Internal Revenue Service . . . a claim against the United States knowing such claim to be false, fictitious and fraudulent by preparing and causing to be prepared, and filing and causing to be filed, what purported to be a 2008 federal income tax return Form 5405, wherein he falsely claimed the First Time Homebuyer Tax Credit for . . . a property that he did not own and had never owned, and aided, abetted, counseled, commanded and procured the same. In violation of Title 18, United States Code Section 287 and 2."

2. The issue here is one of law, not fact. The factual bar to an acquittal under Rule 29(c) is formidable. "[T]he trial judge must resolve all evidentiary conflicts and credibility questions in the prosecution's favor; and, moreover, as among competing inferences, two or more of which are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt." *United States v. Olbres,* 61 F.3d 967, 970 (1st Cir.1995).

3. The government offered evidence that Davis had received only a $79 tax refund the previous year and that there had been no change in his adjusted gross income between the 2007 and 2008 tax years.

4. When first interviewed by investigators, Davis denied having filed a 2008 federal tax return at all.

volv[ed] the First Time Home Buyer Tax Credit."

With respect to aiding and abetting, the jury was instructed that it need only find that Davis had "willfully participated in [the scheme] as something that he wished to bring about, and by his actions to have sought to make it succeed.... Participation in every stage of an illegal venture is not required to be guilty as an accomplice; it is sufficient if the government proves beyond a reasonable doubt a defendant's participation at some significant stage of the transaction."[5] The instruction did not, however, address the degree of knowledge of the false claim that Davis would have to possess to be found guilty as an accomplice.

That issue was flagged when the jury asked whether the substantive crime required proof that Davis "*specifically* and knowingly filed a false claim re: the first time homebuyers tax credit." (The jurors supplied the emphasis). They then asked: "Please also direct us to the answer for how this bears on the aiding + abetting argument? Must he have known that the tax preparer was fraudulently filing the first-time homebuyer tax credit specifically?" In discussing the jurors' questions with counsel, the court's tentative conclusion was that the knowledge component was the same under both theories of liability. After further research, the court reported to counsel that "I ha[d] changed my mind" based, in part, on a reading of *United States v. Garcia–Rosa*, 876 F.2d 209 (1st Cir.1989), vacated on other grounds by *Rivera–Feliciano v. United States*, 498 U.S. 954, 111 S.Ct. 377, 112 L.Ed.2d 391 (1990).

In answering the jury's questions, the court instructed:

For you to find the defendant guilty under an aiding and abetting theory, you would have to find that he intended that a false return be filed; that his intent was formed prior to the filing of the return; that he knew that the form would contain a material false statement, or a material false claim against the government, but he need not know its specific details. That is the difference between aiding and abetting under Section 2 and the substantive offense under Section 287. Or, as the First Circuit has said, "It is well settled that a culpable aider and abettor need not perform the substance (sic) offense, be present when it is performed, or be aware of the details of its execution." But he would have to know that the return would be false....

A juror then asked for further clarification: "So in terms of a false return, would he have to know that it was specifically going to be false relating to the First Time Homebuyer Tax Credit?" The court responded:

To convict the defendant under 287, the substantive offense, the answer is "yes." Under an aiding and abetting theory, he wouldn't have to know necessarily that it was going to involve the First Time Homebuyer Credit. He would have to know, however, that a material false statement was going to be made; that he would have to materially assist, affirmatively assist, the principal in making that happen.

Despite the length of their briefs, the parties' positions can be succinctly stated. Davis argues that to obtain a conviction for aiding and abetting, "[t]he government must prove that the defendant knew that

---

**5.** The gist of the instruction tracked Justice Hand's famous aiding and abetting formulation in *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938). *See also Nye & Nissen v. United States*, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949).

the specific crime charged was going to be committed by the principal." Def.'s Mot. at 12. As Davis sees it, the "specific crime" charged was submitting the false Form 5405. For its part, the government argues that the specific crime at issue was the making of the false claim and, that for the purposes of aiding and abetting liability, "an actor does not need to be aware of all details of a principal's execution of a crime in order to know that the principal intends to commit a specific criminal act and support him or her in that endeavor." Govt.'s Br. at 8 n. 3.

In *Garcia–Rosa,* the principal case relied on by the court in answering the jury's question(s), the First Circuit held (consistent with the holdings of almost every other Circuit Court), that a defendant "need not perform the substantive offense, be present when it is performed, or be aware of the details of its execution." 876 F.2d at 217, citing *United States v. Hernando Ospina,* 798 F.2d 1570, 1581–1582 (11th Cir.1986). *See Collins v. United States,* 65 F.2d 545, 547 (5th Cir.1933) ("It is not necessary to prove he was present when the crime was committed or actively participated therein. He must be considered as having aided and abetted the commission of the crime if what he did made possible and tended to cause its commission."); *United States v. Hamblin,* 911 F.2d 551, 557–558 (11th Cir.1990) (same); *United States v. Sampol,* 636 F.2d 621, 676 (D.C.Cir.1980) (same); *United States v. James,* 528 F.2d 999, 1015 (5th Cir.1976) (same). *See also United States v. Loder,* 23 F.3d 586, 591 (1st Cir.1994) (in order to sustain conviction of aiding and abetting mail fraud, "the government must present evidence that would allow a rational trier of fact to conclude that [defendant] had knowledge that he was furthering mail fraud ... he need not be aware of all the details of the mail fraud...."); *United States v. Bristol–Martir,* 570 F.3d 29, 39 (1st Cir.2009), quoting *United States v. Hernandez,* 218 F.3d 58, 65 (1st Cir.2000) (affirming conviction of defendant for aiding and abetting an attempt to possess with intent to distribute narcotics, noting that "[k]nowledge of the particular controlled substance being imported or distributed is not necessary....").

To take the example the court used in discussing the issue with counsel at trial, if the intended crime is murder, it matters little to liability that the aider and abettor was unaware whether the death blow would be struck with a gun or a knife. What matters is that the defendant share with his principal the intent necessary to convict for murder, that is, the mental state of malice. To share the principal's purposeful intent is not, however, the same thing as sharing perfect knowledge of the manner or means by which the principal would carry out the intended crime(s). To continue with the murder example: if the principal's intent was premeditated, it would be sufficient for purposes of liability if the accomplice were to be found guilty on a theory of third-prong malice (a strong and plain likelihood of death).[6]

The distinction between purposeful intent and knowledge, while often subtle, is significant. The difference may have been best described by the District of Columbia Circuit in *United States v. Walker,* 99 F.3d 439 (D.C.Cir.1996). In *Walker,* the defendant was found in a bedroom with two other persons surrounded by drugs and

---

**6.** *See also United States v. Edmond,* 924 F.2d 261, 267 (D.C.Cir.1991), cited in *Walker, infra* (if jurors thought that an aider and abettor had premeditated a murder, but had enlisted an executioner at the last possible moment, they "could consistently convict the abettor of first-degree murder while finding the actual perpetrator guilty only of [second-degree murder].").

drug paraphernalia. Walker admitted that he used the bedroom when visiting the house, but denied that any of the drug-related material was his. The jury convicted Walker as both a principal and as an aider and abettor without distinguishing between the two theories of liability. The issue on appeal was the sufficiency of the evidence on the aiding and abetting theory. The trial judge had instructed the jury that to convict Walker, they need not find that he shared the "same intent" or even "intended to commit the particular crime committed by the principal offender." *Id.* at 442. Noting the government's discomfort with prior cases that seem to have held that the "same intent" element required a showing that "an aider and abettor must have *exactly* the same knowledge, and disposition as the principal," the Court disagreed. "[T]hat is an overreading; no court has ever so held, as it virtually would eliminate aider and abettor liability." *Id.*

▮ It takes no great leap of imagination to recognize that the "probable and natural consequences" doctrine of aiding and abetting, which holds an accomplice responsible for all foreseeable criminal acts flowing from the common scheme (a form of *Pinkerton* liability), a doctrine recognized in all Circuits (although not always consistently applied), would be defeated by any definition of aiding and abetting that required the accomplice to have perfect knowledge of the details of the crimes the principal intended to commit. *See Walker,* 99 F.3d at 443 ("[O]nce a common design is established, the aider and abettor is responsible not only for the success of the common design, but also for the probable and natural consequences that flow from its execution, even if those consequences were not originally intended."); *United States v. Spinney,* 65 F.3d 231, 237 (1995) (holding aider and abettor liable for the principal's use of a weapon to commit armed bank robbery because "shared knowledge" need not amount to "actual knowledge" that a gun would be used to perpetrate the robbery); *United States v. Beck,* 615 F.2d 441, 453–455 (7th Cir.1980) (holding the aider and abettor of an illegal arms export scheme liable for the foreseeable false statements subsequently made by the principal to Customs authorities);[7] *United States v. Austin,* 585 F.2d 1271, 1277 (5th Cir.1978) (aider and abettor who joined a scheme to misapply bank funds held liable for the principal's subsequent and foreseeable filing of false statements with the FDIC even though he did not participate in the filing)[8]; *United States v. Wills,* 88 F.3d 704, 720 (9th Cir.1996) (holding the aider and abettor of a bank robbery liable for the principal's foreseeable use of a destructive device); *United States v. DeLaMotte,* 434 F.2d 289, 293 (2d Cir.1970) (holding the aider and abetter of a hijacking responsible for the crime of kidnapping because the "detention and interstate transportation" of a trucker whose truck was hijacked "were shown to be reasonably foreseeable."). Because the filing of a false claim for a first time homebuyer's tax credit by the principal was reasonably foreseeable to Davis at the time he agreed to facilitate the commission

---

7. In *Beck,* the Court explained: "As in all cases of aiding and abetting, it is not necessary that the defendant have knowledge of the particular means the principal in the crime uses to carry out the criminal activity." *Id.* at 453, citing *United States v. Diecidue,* 603 F.2d 535, 557 (5th Cir.1979).

8. In *Austin,* the Court explained: "It is not necessary, however, that one charged as an aider or abettor commit the overt acts that serve to accomplish the offense or that he have knowledge of the particular means his principals (in this case the three Bank officers) employ to carry out the criminal activity." *Id.* (citations omitted)

of the tax offense, he was properly convicted as an aider and abettor.

## ORDER

For the foregoing reasons, the motion for judgment of acquittal is *DENIED*. The Clerk will set the case for sentencing.

SO ORDERED.