**Luther M. POWELL, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21678.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 12, 1969.

Decided June 11, 1969.

---

Mr. Michael H. Gottesman, Washington, D. C. (appointed by this court) for appellant.

Mr. John D. Aldock, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty. at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty. at the time the brief was filed, and Miss Carol Garfiel, Asst. U. S. Atty., were on the brief, for appellee. Mr. William M. Cohen, Asst. U. S. Atty., also entered an appearance for appellee.

Before WRIGHT, McGOWAN and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant was arrested while operating a cab exhibiting the name and colors

of the Coast Line Cab Company, and was later found guilty by a jury in the District Court of an unauthorized use of that vehicle.[1] In this court he contends that the evidence adduced by the Government on its case in chief was legally insufficient to show that he was driving the cab without lawful authority, and that his motion, then made, for a judgment of acquittal[2] should accordingly have been granted. From our scrutiny of the record, we conclude that the motion was properly denied,[3] and in consequence we affirm the conviction.

William D. Berkley was the owner of several cabs for which Coast Line acted as rental agent; Coast Line painted its colors and lettering on the cabs and procured drivers for them. On Saturday, October 29, 1966, Berkley visited Coast Line's lot and discovered that one of his cabs was not there, and this he reported to Coast Line's manager, Warren R. King. The cab had been returned to the lot by a Coast Line driver on Wednesday or Thursday of that week,[4] and King had noted that it was not on the lot on Friday.[5] He had thought, however, that it might have been in the shop for repairs, or that Berkley might have removed it for a similar purpose. On Saturday, after Berkley's report, King transmitted a message by radio to all Coast Line drivers soliciting their vigilance for the missing cab.

Somewhat later on Saturday, a Coast Line driver spotted the cab on the streets and immediately informed his dispatch-er. The police were then notified, and an officer followed the cab and stopped it after a passenger was discharged. Behind the wheel was appellant, and he was unable to produce a hacker's license, an operator's permit, or a registration certificate for the vehicle.

Both Berkley and King testified at appellant's trial that they did not know appellant, and did not give him permission to drive the cab. Moreover, the evidence disclosed, only the manager and his two secretaries were authorized to consummate rentals of cabs to prospective drivers. Rentals were limited to persons holding a hacker's license, and each transaction was evidenced by a written rental agreement. These agreements, containing information identifying the cab and the person renting it, were kept on file among Coast Line's business records. No such agreement, the manager avowed, had ever been made with appellant.

At the conclusion of the Government's case in chief, appellant's trial counsel moved for a judgment of acquittal on the ground that the evidence did not foreclose the possibility that appellant had ample authority to use the cab. Appellant's contention, reiterated here, was that the secretaries could have given appellant leave to operate the vehicle and that, without their testimony to the contrary, the Government had not proven an essential element of the offense. The court, deeming the evidence sufficient to carry the case to the jury, denied the

---

1. "Any person who, without the consent of the owner shall take, use, operate, or remove, or cause to be taken, used, operated, or removed from a garage, stable, or other building, or from any place or locality on a public or private highway, park, parkway, street, lot, field, inclosure, or space, an automobile or motor vehicle, and operate or drive or cause the same to be operated or driven for his own profit, use, or purpose shall be punished by a fine not exceeding one thousand dollars or imprisonment not exceeding five years, or both such fine and imprisonment." D.C.Code § 22-2204 (1967 ed.).

2. Fed.R.Crim.P. 29.

3. See note 9, *infra.*

4. King testified that cabs were parked on the lot with keys in ignition switches when they were not in use.

5. He said that on that day the vehicle had nonetheless appeared on the company's daily rental list, which indicated its availability for rental.

motion,[6] and we think it was right in doing so.

A motion for a judgment of acquittal enjoins the trial judge to "determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt."[7] For this purpose, the judge must "assume the truth of the Government's evidence and give the Government the benefit of all legitimate inferences to be drawn therefrom."[8] If the evidence, so measured at the point in the prosecution to which the motion is properly addressed,[9] portends to establish guilt beyond a reasonable doubt, it is for the jury to make the decision as to whether it actually does.

Adequate proof that appellant drove the cab without the consent of the owner, or some other person empowered to consent in the owner's behalf, was a precondition of conviction.[10] In our view, however, the Government adduced enough evidence of an absence of such consent to justify the refusal of appellant's motion. The owner of the cab and the manager of the cab company testified that they never gave appellant permission to use the cab—indeed, that they did not even know him. The evidence made it clear that only two other persons—the secretaries—could have authorized the use of Coast Line cabs. The secretaries, however, were required to make and file written agreements covering all rental transactions, and as to appellant's operation of the cab there was none. The secretaries, moreover, were under instructions to rent cabs only to those possessing a hacker's license, which appellant lacked when arrested.

We think, too, that the jury could legitimately have acknowledged that employees ordinarily are observant of restrictions on their authority, and obedient to employer mandates as to how their tasks are to be performed.[11] A contrary conclusion could have derived only from a complete rejection of what is normal human experience on that score, coupled with sheer speculation that at least one of the secretaries seriously and unexplainably deviated from duty. Viewing cumulatively the totality of the evidentiary items touching on the issue, the jury could reasonably have inferred that the secretaries never gave appellant the privilege of using the cab.

---

6. Appellant thereafter took the witness stand in his own behalf and testified that he had been a taxi driver for 12 years prior to 1966, and that the last driver to rent the cab, Robert Taylor, had given him permission to return it to the company's lot, which he was doing when he was arrested. This was denied by Robert Taylor, testifying for the Government on rebuttal, who added that he did not even know appellant.

7. Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). See also Crawford v. United States, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967); Cooper v. United States, 94 U.S.App.D.C. 343, 345, 218 F.2d 39, 41 (1954).

8. Curley v. United States, supra note 7, 81 U.S.App.D.C. at 392, 160 F.2d at 232.

9. In the case at bar, we measure the evidence as it was when the Government rested its case in chief, for that was the point at which the motion was made. Austin v. United States, 127 U.S.App. D.C. 180, 189, 382 F.2d 129, 138 (1967); Crawford v. United States, supra note 7, 126 U.S.App.D.C. at 158, 375 F.2d at 334; Cephus v. United States, 117 U.S. App.D.C. 15, 17–19, 324 F.2d 893, 895–897 (1963). There is no claim, nor hardly could there be one, that appellant fares better on a view taken at the close of all of the evidence. See note 6, supra.

10. See note 1, supra. The situation revealed by the evidence in this case does not require the expression of an opinion as to the efficacy of an apparently valid permission granted by one who was not authorized by the vehicle's owner to consent to its use.

11. Compare Atwood v. Kleberg, 163 F.2d 108, 113 (5th Cir.), cert. denied 332 U.S. 843, 68 S.Ct. 267, 92 L.Ed. 414 (1947). See also 9 J. Wigmore, Evidence § 2570 (3d ed. 1940).

In sum, the Government's presentation combined circumstances which a jury might accept as a negation of all probative deductions of consent. We perceive no sound reason why non-consent, like other elements of the offense, cannot be shown by circumstantial evidence so long as it meets the standards of proof accepted in the criminal law.[12] Nor do we attach significance to the consideration that the Government's case might have been stronger had the secretaries' non-consent been attested by their direct statements from the witness stand.[13] It is not ground for complaint that the Government chose instead to stake the prosecution on evidence that appellant regards as proof of a distinctly lower order.[14]

Affirmed.

12. In some jurisdictions, non-consent in larceny-type cases can be proven only by testimony of the owner or custodian of the property taken. See the discussion in 7 J. Wigmore, Evidence § 2089 (3d ed. 1940). Like Dean Wigmore, we find little to commend such a restriction. Rather, we are persuaded to follow the lead of cases holding that non-consent may be established by adequate circumstantial evidence. *See e. g.*, State v. Butler, 82 Ariz. 25, 307 P.2d 916, 919 (1957) (grand theft); People v. Davis, 97 Cal. 194, 31 P. 1109 (1893) (larceny); People v. Jacks, 76 Mich. 218, 221, 42 N.W. 1134, 1135 (1889) (larceny); Phillips v. State, 144 Neb. 772, 14 N.W.2d 606, 607 (1944) (hog stealing); State v. Patchen, 36 Nev. 510, 137 P. 406, 407–408 (1913) (larceny); Davidson v. State, 330 P.2d 607, 620–621 (Okl.Cr.1958) (larceny); State v. Faulk, 22 S.D. 183, 116 N.W. 72, 74 (1908) (larceny); State v. Wong Quong, 27 Wash. 93, 67 P. 355 (1901) (larceny). But see note 14, *infra.*

13. Compare 1 J. Wigmore, Evidence § 26 (3d ed. 1940).

14. The legal sufficiency of circumstantial evidence to support a finding of non-consent is necessarily a matter of degree to be gauged in terms of its potential impact upon reasonable minds. Compare the text *supra* at notes 7–9. In particular situations, of course, the circumstances offered may be too impotent to attest non-consent. *See, e. g.*, Bruck v. State, 244 Ind. 466, 193 N.E.2d 491 (1963); State v. Patterson, 347 Mo. 802, 149 S.W.2d 332 (1941). Our review of the record on the instant appeal satisfies us that such was not the case here.