UNITED STATES of America
v.
Hubert SKINNER, Appellant.
No. 22776.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 24, 1969.

Decided Feb. 10, 1970.

Mr. Wilmer B. Hill, Washington, D. C. (appointed by this court) for appellant.

Mr. Terry P. Segal, Asst. U. S. Atty., for appellee. Messrs. Thomas A. Flannery, U. S. Atty., Roger E. Zuckerman, Daniel J. Givelber, Asst. U. S. Attys., and Robert P. Watkins, Asst. U. S. Atty. at the time the brief was filed, were on the brief, for appellee. Mr. David G. Bress, U. S. Atty. at the time the record was filed, and John A. Terry, Asst. U. S. Atty., also entered appearances for appellee.

Before FAHY, Senior Circuit Judge, and McGOWAN and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

This case is unique in that practically all the critical evidence determinative of guilt was visual evidence presented by means of a court room demonstration. The principal question is whether the trial court properly denied appellant's motion for judgment of acquittal at the conclusion of the Government's case. Appellant Skinner was indicted for the following offenses: I, assault with intent to kill while armed (D.C. Code §§ 22–501, 22–3202); II, assault with intent to kill (D.C.Code § 22–501); and III, assault with a dangerous weapon (D.C.Code § 22–502). He was acquitted on Counts I and II and found guilty on Count III. Because the nature of the evidence posed essentially a jury question that the jury resolved against the appellant on unchallenged instructions, we affirm.

I

The Government's case consisted almost entirely of the testimony of the victim, Lowry, who while unarmed was shot in the head. He testified that on July 23, 1968 between 10 and 10:30 P.M. after having had a can of beer (or two) he was in front of a supermarket after having bought some cigarettes. Four people were on a rail in front of the store. He knew one of them, Deskins. He engaged in conversation with Deskins when they were interrupted by Skinner who said something that made Lowry very angry. Lowry replied that he was not talking to him and the best thing for him (Skinner) to do was to keep his mouth closed. Some additional arguing followed and then the group of four got up from the rail and left. When they had proceeded to a point about 30 feet away from Lowry someone yelled back, "I'll kill you." Lowry did not recognize the voice. His brother then told Lowry to leave, but he refused to do so and proceeded around the corner of the building following the group of four and still arguing and asking who had made the threatening statement. Lowry directed his remarks at Skinner because he believed Skinner said it. Lowry said "I don't believe you are going to kill me." Skinner did not then say anything further. The group of four then proceeded up the alley with Lowry trailing somewhat behind. At this point, Bell, a friend of Lowry's, tried to persuade Lowry not to say anything more about the threat. By this time the group of four had reached a point in the alley where they were standing in a row with about 1 to 2 feet (or 2 or 3 feet) separating each of the four on a ledge about 3½ to 4 feet above the level of the alley where Lowry was walking and where he later stopped. The lighting in the alley was good. Bell was still trying to persuade Lowry not to say anything further but Lowry kept proceeding up the alley. He soon arrived at a point where he was "right" "in front of" Skinner when "he (Lowry) was shot." At that moment Skinner was

still standing on the ledge and at the extreme right of the other three who were all standing in a row separated as previously described.

Immediately prior to being shot Lowry observed Skinner standing on the ledge with his hand in his pocket "like this." Lowry was "at an angle towards" Skinner with his (Lowry's) *"shoulder * * adjacent to him* (Skinner)." The left side of Lowry's body and his shoulder were in front of Skinner, but he was not facing Skinner directly. Lowry never saw a gun. He "saw a flash of light and it just felt like I had run into a wall." He was hit by a bullet above his left eye, the bullet going in above his left eye and coming out to the right of his right nostril. A photograph of Lowry taken two days after the shooting corroborated the entry and exit points of the bullet.

The exact relative position of each person present and their posture at the time of the shooting was presented by Lowry to the jury by means of a demonstration and a sketch. He made a blackboard sketch of the location of those present, explained it by testimony and later, with the prosecutor assisting and using a court room table for the ledge, personally demonstrated the relative position of the participants. On cross examination the same demonstration was repeated. The evidence in this respect included a statement and demonstration by Lowry as to the path of the bullet and a denial that he was "just assuming" that Skinner shot him. Such evidence was received without objection.

Appellant's counsel on cross examination made two unsuccessful attempts to induce Lowry to support a defense theory of the path of the bullet. Lowry refused to do so and stood by his testimony given on direct examination. Appellant's counsel was similarly rebuffed by the judge when he made the same claim in connection with his argument on the motion for acquittal.

## II

Appellant here contends that the trial court should have granted the motion for acquittal at the close of the Government's case and that the evidence is insufficient to support the verdict. His brief claims that the Government established nothing more than that Skinner was at the scene of the crime and there was no evidence that Skinner even had a gun. This is an extreme understatement of the evidence presented by the Government and of the inferences reasonably to be drawn therefrom. Appellant completely ignores critical visual evidence and the reasonable inferences therefrom.

It is axiomatic on motion for acquittal that all reasonable inferences are to be resolved in favor of the prosecution and the trial court is required to view the evidence in the light most favorable to the Government with respect to each element of the offense. Tanner v. United States, 401 F.2d 281 (8th Cir. 1968), cert. denied, 393 U.S. 1109, 89 S.Ct. 922, 21 L.Ed.2d 806 (1969); Maguire v. United States, 358 F.2d 442, 444 (10th Cir. 1966).

We likewise agree with appellant that the Government's case cannot rest on mere suspicion, conjecture or speculation. There must be sufficient credible evidence and justifiable inferences of fact from which a reasonable mind might fairly conclude guilt beyond a reasonable doubt. Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947); Crawford v. United States, 126 U.S.App. D.C. 156, 375 F.2d 332 (1967); Cooper v. United States, 94 U.S.App.D.C. 343, 218 F.2d 39 (1954). It is by these standards that we view the record in this case. When we apply these standards we find that a substantially stronger case for the Government is presented than appellant admits. The court had full opportunity to observe all the visual evidence and to hear the witnesses and

on that basis decided that the case was for the jury and the jury with the same advantage concluded that Skinner is guilty.

The visual evidence presented was reasonably capable of producing such a verdict and the decisions of both the court and jury are thus based primarily on undisputed evidence of the highest probative value that is not available to a court on appeal. From such evidence the jury and court had a full opportunity to determine accurately the relative location of appellant with respect to the other participants at the critical moment when the shot was fired. Not only was the lateral position of the participants portrayed by the demonstration but also their relative elevation. The prosecutor assisted by standing on a court room table to simulate Skinner on the ledge and Lowry demonstrated "exactly what position" he was in and "where the bullet came from." *This case turns on those facts*, because from them the trajectory of the bullet could be accurately traced to the person who fired the gun. The court decided that question was properly for the jury and the jury decided that Skinner was that person.

It has been said that a picture is worth a thousand words but for the purposes here required this demonstration was of even greater value because it vividly portrayed that essential third dimension which a picture lacks. The demonstration was visual testimony of the greatest probative value.

In similar shooting cases courts have allowed the introduction of a photograph taken long after the event and the placement of hotel room furniture in the court room to simulate a murder scene, Hughes v. State, 126 Tenn. 40, 148 S.W. 543, 550–551 (1912); a physical demonstration of the angle of a pistol at the time it was fired, State v. Atwood, 250 N.C. 141, 108 S.E.2d 219, 86 A.L.R.2d 602 (1959), and a manikin to demonstrate the trajectory of bullets. People v. Robillard, 55 Cal.2d 88, 10 Cal.Rptr. 167, 358 P.2d 295, 301, 83 A.L.R.2d 1086 (1960); Ford v. State, 222 Ark. 16, 257 S.W.2d 30, 33 (1953).

Demonstrations should be carefully staged, the widest opportunity allowed for cross examination and great care taken to instruct the jury properly on reasonable doubt because a jury's finding in a case, where a demonstration furnishes the determinative evidence, is practically unassailable on appeal. The admissibility of such visual evidence is within the sound discretion of the court.

It is no objection to a demonstration presented as visual evidence that it is practically impossible to transmit to an appellate court for review as the same is true of much other evidence. Very frequently the character of the evidence received at trial affords the jury a much better means of judging it than an appellate court has of reviewing it. This is true of an identification by pointing out a person in court. Also, a witness' facial expressions, tone of voice, accent, mode and manner of expression, general appearance and demeanor on the stand, complexion, color of hair, skin and eyes, comparative size, amount of force, quickness of movement and a host of other evidentiary matters observed in court are all best evaluated by the jury and trial court. Such evidence is similar to a viewing by a jury. *See* 4 Wigmore, Evidence §§ 1162–1168 (3d ed. 1940). The visual evidence in this case is not a part of the printed record but the appellate court is required to give full credit to all reasonable inferences deducible therefrom.

From the visual evidence, and particularly the demonstration, it was possible with great accuracy to determine the trajectory of the bullet and hence to furnish a basis from which the court and jury could conclude beyond a reasonable doubt that Skinner fired the bullet that hit Lowry and to determine that it was impossible because of their relative position with respect to Lowry for any of the others present

**556**

to have fired the shot.[1] It was also possible from such evidence for the jury to find the essential elements of the offense, i. e., that Skinner had a dangerous weapon in his possession at the time Lowry was shot and that Skinner fired the shot from a pistol. All the facts necessary to convict Skinner thus could reasonably be inferred from visual evidence that does not appear as part of the printed record.

Finally, and this is most important, appellant has never made any objection to the introduction of the demonstration,[2] either at the time the Government started it, at the conclusion thereof, or even on this appeal.

■ On such a record an appellate court is without power to alter the jury's verdict. Findings of fact by a trial court even on conflicting evidence do not present a reviewable issue for an appellate court, United States v. Johnson, 327 U.S. 106, 113, 66 S.Ct. 464, 90 L.Ed. 562 (1946), and here there was no conflict in the evidence. It is no more the function of an appellate court to review the findings of fact of the trial court and jury based on uncontradicted visual evidence that it is to review the credibility of the witnesses.[3] We accordingly conclude that no proper basis is presented for substituting our judgment for the conclusions reached by the trial court on the motion for acquittal or by the jury on the verdict of guilty. No objection has ever been raised to the instructions given the jury and we conclude they properly carried out their duties. The judgment is accordingly

Affirmed.

FAHY, Senior Circuit Judge (concurring):

I concur in affirmance. In doing so, however, I cannot give to the visual evidence the weight ascribed to it by the court; for this evidence is not reflected in the record in a manner which enables me to do so. The demonstrations and the blackboard drawing are not before us. The record references to them are all that are available to us and these references fall far short of justifying me in characterizing the visual evidence as does the opinion of the court. By way of illustrations the opinion states that from such evidence it was "possible with great accuracy to determine" who fired the shot, and that such evidence caused the decision of the trial court and of the jury to be based primarily on undisputed evidence "of the highest probative value that is not available to a court on appeal." The very lack of its availability to us should I think warn us not to appraise the evidence in the manner stated.

---

1. It was established by testimony as to "the flash" of the gun and the instantaneous effect on Lowry that the bullet which hit him came from close proximity and not from some distant location.

2. Or the blackboard sketch.

3. The credibility of witnesses is not subject to review by an appellate court. United States v. Howard, 327 F.2d 765, 767 (7th Cir. 1964); United States v. Bagdasian, 291 F.2d 163, 166 (4th Cir. 1961); nor is the weight of the evidence. Slocum v. United States, 325 F.2d 465, 468 (8th Cir. 1963).