UNITED STATES of America, Appellee,

v.

WRITERS & RESEARCH,
INC., Defendant,

Charles R. Pixley, Defendant–Appellant.

No. 834, Docket 96–1476.

United States Court of Appeals,
Second Circuit.

Argued Jan. 27, 1997.

Decided May 7, 1997.

---

William H. Moore, Jr., Savannah, Georgia, for Defendant–Appellant.

Christopher V. Taffe, Assistant United States Attorney for the Western District of New York, Rochester, New York (Patrick H. NeMoyer, United States Attorney for the Western District of New York, Rochester, New York, of counsel) for Appellee.

Before: WALKER, PARKER, and HEANEY,* Circuit Judges.

* The Honorable Gerald W. Heaney, United States Senior Circuit Judge for the Eighth Circuit, sitting by designation.

HEANEY, Senior Circuit Judge:

Charles R. Pixley appeals his conviction following a bench trial in the United States District Court, Western District of New York (Telesca, J.) on one felony count of conspiracy in violation of 18 U.S.C. § 371 (1988)[1] and eighteen misdemeanor counts of causing the introduction of an unapproved new drug into interstate commerce in violation of 21 U.S.C. § 333(a)(1) (1988). The government indicted Pixley and Writers & Research, Inc., a business owned and operated by Pixley, after an investigation by the Food and Drug Administration (FDA) revealed that Pixley, through Writers & Research, Inc., was brokering sales to United States residents of an unapproved new drug called 714X which was manufactured in Quebec, Canada. Pixley marketed 714X to individuals and doctors through publications distributed by Writers & Research that touted the benefits of 714X for persons afflicted with cancer, AIDS, and other chronic, degenerative diseases.

The district court considered the evidence, including Pixley's proffered defense that 714X is a homeopathic drug listed in the Homoeopathic Pharmacopoeia, and thus safe and effective for its intended use. In a decision and order filed on April 19, 1996, the court made its findings of fact and entered guilty verdicts against Pixley on all counts. On July 9, 1996, the court sentenced Pixley to one year and one, day in prison for the conspiracy conviction and to concurrent twelve-month terms in prison on the remaining counts all to be served concurrently with the conspiracy sentence. Pixley filed a timely notice of appeal and we now affirm the district court.

## BACKGROUND

In early 1992, the FDA received information that an unapproved new drug called 714X was being promoted and distributed by Pixley through Writers & Research. The FDA inspected the offices of Writers & Research in January 1992 and again in March 1993. Promotional literature obtained during the inspections revealed that 714X was being offered as a non-toxic treatment for cancer, AIDS, and other chronic degenerative diseases. According to its label, the full chemical name of 714X was trimethylbicyclonitraminoheptane. According to expert witnesses, however, this chemical name was unrecognizable and did not accurately identify the contents of the substance to consumers or medical professionals.[2]

Persons interested in obtaining 714X were required to purchase the promotional literature, including a book by Pixley entitled *Do No Harm*, for approximately $10. Pixley refused to arrange for a shipment of 714X until prospective customers sent him a signed statement that they had read the book. 714X sold for approximately $150 per two-dose vial. Pixley's role as broker was a lucrative one: In 1992 his profits from sales of 714X were $324,000 and that amount increased to an estimated $616,000 in 1993.

At trial, the government produced evidence that Pixley was aware of FDA regulations governing the distribution of unapproved new drugs in the United States. His corporate offices were twice inspected by the FDA at which time the FDA explicitly advised him that his conduct constituted the promotion and sale of an unapproved drug and was contrary to law. In addition, between March and August 1993, Pixley retained a government lobbyist, ostensibly to help him usher 714X through the FDA-approval process. The lobbyist resigned, however, because she believed that Pixley's true intention was to evade complying with federal regulations and to continue his mail-order operation despite the FDA's notices of noncompliance with regulations. The govern-

---

1. The indictment sets forth two objects of the alleged conspiracy. The first object charged was defrauding the FDA by impairing and obstructing its lawful regulatory function. The second object alleged was the introduction of an unapproved new drug in interstate commerce in violation of 21 U.S.C. §§ 331(d), 333(a)(1) and 355(a). Although either object could have served as a basis for the conspiracy count, the district court found that the government proved both objects beyond a reasonable doubt. (District Ct.Op. at 16–17.)

2. FDA laboratory tests revealed that 714X was made up of 94% water, .07% camphor, .54% ethanol, .38% sodium, .6% chloride, 1.4% ammonium, and 4.9% nitrate.

ment also offered expert testimony that 714X has not been clinically established as safe and effective for use in the treatment of human diseases nor is the drug generally recognized as safe and effective for that purpose among qualified experts.

## DISCUSSION

Pixley raises the following claims challenging his convictions: (1) the district court erred in determining that 714X was not a homeopathic drug exempt from the FDA's pre-market approval requirements; (2) steps taken by the FDA to explicitly exclude 714X from a personal importation exemption were illegal, thereby defeating the indictment; (3) the court constructively amended the indictment causing a prejudicial variance between the crimes charged and that for which Pixley was convicted; and (4) his convictions are contrary to a constitutionally-protected liberty interest in the use of unapproved drugs to treat diseases.

### A. *Exemption From the FDA Regulations*

Pixley asserts on appeal, as he did in the district court, that 714X is a homeopathic drug and that it is therefore exempt from the pre-market regulation under the Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. §§ 301–393 (1988). The district court, although noting the lack of proof that 714X was a homeopathic drug, concluded that it was subject to the FDA regulation regardless of its status. We agree.

█ The definition of a "drug" under the FDCA includes, "articles recognized in the official United States Pharmacopoeia, official Homeopathic Pharmacopoeia of the United States . . . and articles intended for use in the diagnosis, cure, mitigation, treatment, or

prevention of disease in man or other animals." 21 U.S.C. § 321(g)(1)(A)–(B). Regardless of the classification of a drug, if an article is intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man it is defined as a drug. *See United States v. Guardian Chem. Corp.,* 410 F.2d 157, 162 (2d Cir.1969); *United States v. 48 Dozen Packages,* 94 F.2d 641, 642 (2d Cir.1938). The formal policy of the FDA is that if a homeopathic drug is not labeled as homeopathic or if a homeopathic drug "is offered for the cure, mitigation, prevention, or treatment of disease conditions," it is regulated by the FDCA as a drug. (Appellee's App. at 65–66 (FDA Compliance Policy Guide Manual, § 400.400 at 106–07).)

█ We agree with the district court that, as a matter of law, if 714X was promoted as a treatment or cure for cancer, AIDS, or other diseases, it is subject to the requirements of the FDCA regardless of whether it is a homeopathic drug. The district court found that Pixley promoted 714X as such and its finding is certainly not clearly erroneous. We therefore reject Pixley's argument that the court erred in determining that 714X was not a homeopathic drug and was subject to the requirements of the FDCA.[3]

### B. *Personal Importations Exemption*

Pixley's next argument is based on the FDA policy that exempts from regulation certain unapproved drugs imported in small quantities exclusively for personal use. He claims that because purchasers of 714X imported the drug for personal use, it was not subject to FDA regulation as a new drug. (Appellee's App. at 76–80 citing (Regulatory Procedures Manual, Pt. 9, Ch. 9–71).) The district court found that Pixley's conduct—notwithstanding any conduct of the purchas-

---

3. In a claim he closely intertwines with this one, Pixley also contends that the district court erred in denying his motions for acquittal made at the close of evidence because the government failed to prove that 714X constituted a drug. We review a denial of a motion for acquittal to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

"[A]ll reasonable inferences are to be resolved in favor of the prosecution and the trial court is required to view the evidence in the light most favorable to the Government with respect to each element of the offense." *United States v. Artuso,* 618 F.2d 192, 195 (2d Cir.1980) (quoting *United States v. Skinner,* 425 F.2d 552, 554 (D.C.Cir. 1970)). Considering all the evidence submitted at trial, particularly the evidence that 714X is a drug within the meaning of the FDCA, the court's denial of Pixley's Rule 29 motion was appropriate.

ers—fell outside the exemption because he imported 714X for promotional and commercial purposes, not for personal use. Pixley does not challenge this conclusion on appeal.[4] Instead, he now argues that the FDA failed to comply with the Administrative Procedures Act (APA), 5 U.S.C. §§ 551–559 (1988), when, during the course of its investigation into the 714X, it issued an Import Alert explicitly excluding the drug from its personal importation policy.[5]

■ Pixley's argument is flawed. His claim is based, in part, on the factually inaccurate assertion that "[t]he Import Alert was issued solely in an effort to make Defendant–Appellant[']s brokering of 714X[,] which had been perfectly legal ... under the personal Import Policy, suddenly illegal." (Appellant's Br. at 10.) As the district court observed, however, Pixley's commercial activity was never protected under the exemption. To the contrary, the personal importation guidelines instruct FDA personnel to issue an Import Alert if they discover, as they did in this case, the promotion of unapproved foreign products for mail-order shipments. (Appellee's App. at 80 (Regulatory Procedures Manual, pt. 9, ch. 9–71–40).) Moreover, in the appropriate civil context, Pixley would likely lack standing to raise a claim about the procedures employed in issuing an Import Alert. Because his activities were never protected under the policy, Pixley could not be said to have suffered any direct injury as a result of any change to it. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992) (standing requires a showing of an alleged injury that is "an invasion of a legally protected interest"); *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 1722–23, 109 L.Ed.2d 135 (1990) (standing turns not on the merits of the claim that particular conduct is illegal, but rather on whether the claimant demonstrates an "injury in fact").

In any event, the district court did not err in concluding that the FDA's personal importation exemption does not defeat Pixley's indictment.

## C. Constructive Amendment/Variance in Indictment

■ Pixley argues that the district court improperly amended the indictment by questioning a defense witness about possible mislabeling of 714X and based his convictions on a perception that Pixley introduced a mislabelled drug into interstate commerce despite that the indictment did not charge Pixley with that offense. Where there is a variance between the facts alleged in an indictment and the government's actual proof at trial, we reverse only on a showing of substantial prejudice to the defendant. *United States v. Johansen*, 56 F.3d 347, 350 (2d Cir.1995). An indictment is constructively amended when "the terms of the indictment are in effect altered by the presentation of evidence ... which so [modifies the] essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Delano*, 55 F.3d 720, 729 (2d Cir. 1995) (citations and internal quotations omitted). A constructive amendment of an indictment is per se prejudicial. *United States v. Wallace*, 59 F.3d 333, 337 (2d Cir.1995) (citing *United States v. Morgenstern*, 933 F.2d 1108, 1115 (2d Cir.1991)).

■ There was neither a prejudicial variance nor a constructive amendment to the indictment in this case. Without objection by the defendants, the district court inquired about the labelling of 714X, the chemical name given to the drug, and whether the actual ingredients of 714X could be discerned from the drug's chemical name. Because Pixley did not object to these questions, we review only for plain error, affording the

---

**4.** Witnesses at trial testified that Pixley initially told FDA investigators that he was not involved in the sale of 714X, but merely promoted the knowledge of the drug through his publications. (Appellant's App. at 638–39 (District Ct.Op. at 15).) Pixley, however, now openly admits that he brokered the importation of 714X for United States citizens. *See, e.g.,* Appellant's Br. at 2.

**5.** Specifically, Pixley asserts that the FDA had an obligation under 5 U.S.C. § 553 to publish notice of its intended action in the *Federal Register* and to follow the notice and comment procedures set out in the statute before issuing an Import Alert.

district court wide latitude regarding questions by the bench of witnesses. *United States v. Bush,* 47 F.3d 511, 514–15 (2d Cir. 1995). Pixley has no basis to support his claim that the court essentially convicted him for mislabelling offenses. The court's limited questions related to legal and factual issues put squarely before it by the indictment. As the court specifically explained, the questions went to Pixley's intent in light of his proffered defense that he had purely philanthropic motives and lacked any intent to defraud:

> Defense counsel and defense expert ... admitted that 714X was a mislabeled drug. One could not tell the contents of the vial from the description on the label attached to the vial. Although defendant was not charged with mislabeling 714X, ... that fact is clearly indicative of his predisposition to commit fraud upon unsuspecting individuals who hoped that the contents of the vial contained their last hope for a cure or treatment to terminal conditions.

(Appellant's App. at 647 (District Ct.Op. at 24).) The district court did not commit plain error by questioning the defense witness about mislabeling, and Pixley's claim that the proof at trial was factually inconsistent with the indictment is meritless.

#### D. *Liberty Interest*

 Finally, Pixley argues that his criminal convictions violate a Fifth Amendment liberty interest held by him and persons afflicted with terminal diseases to use unapproved drugs as a possible treatment. He bases his constitutional claim on *Quill v. Vacco,* 80 F.3d 716, 731 (2d Cir.), *cert. granted,* —— U.S. ——, 117 S.Ct. 36, 135 L.Ed.2d 1127 (1996), in which we held that state statutes prohibiting a physician from proscribing medications to be self-administered by a mentally competent, terminally-ill person in the final stages of a terminal illness, violated the Equal Protection Clause of the Constitution because that prohibition is not rationally related to any legitimate government interest. *See also Compassion in Dying v. State of Washington,* 79 F.3d 790 (9th Cir.), *cert. granted sub nom., Washington v. Glucksberg,* —— U.S. ——, 117 S.Ct. 37, 135 L.Ed.2d 1128 (1996).

Pixley has not preserved this issue for our review because he did not properly raise it before the district court. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *United States v. Gallerani,* 68 F.3d 611, 617 (2d Cir.1995). Prior to trial, defense counsel informed the court that it did not intend to raise any defenses based on a claimed constitutionally-protected right to choose medical treatment. (Appellee's App. at 93 (Apr. 2, 1996 Hr'g Tr. at 8:11–20).) Although Rule 52(b) of the Federal Rules of Criminal Procedure permits us to review the issue for plain error if doing so would correct a particularly egregious error or redress a miscarriage of justice, *United States v. Melendez,* 60 F.3d 41, 48 (2d Cir. 1995), such circumstances are not presented in this case. To the contrary, as we stated in *Quill,* we are extremely reluctant to identify a new fundamental right in the absence of a clear direction from the Supreme Court. *Quill,* 80 F.3d at 725.

### CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.