**UNITED STATES of America,**

v.

**Jeffrey Dewhite EDWARDS, Defendant.**

**No. CRIM.A. 03–156(RWR).**

United States District Court,
District of Columbia.

July 12, 2004.

Patrick Pearse O'Donnell, Harris, Wiltshire & Grannis, Tony W. Miles, Federal Public Defender for D.C., Washington, DC, for Defendant.

James W. Cooper, U.S. Attorney's Office, Washington, DC, for Plaintiff.

### MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.

Defendant Jeffrey Edwards moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a) on both counts of the indictment against him, arguing that the government failed to prove beyond a reasonable doubt that the defendant's alleged conduct constituted bribery as charged in Count One or extortion by threatened economic harm or under color of official right as charged in Count Two. The defendant's motion with respect to the bribery charge was denied, but ruling was reserved on the extortion charge. Because the government's evidence during its case-in-chief was sufficient to permit a reasonable jury to conclude that the defendant's conduct had more than a *de minimus* effect on interstate commerce, the defendant's Rule 29(a) motion with respect to Count Two of the indictment will be denied.

### BACKGROUND

The defendant, a former asbestos inspector with the D.C. Department of Health, was charged in a two-count indictment with bribery in violation of 18 U.S.C. § 201 (2000), and extortion by threatened economic harm and under color of official right in violation of 18 U.S.C. § 1951(a) (2000). At the defendant's trial, Carlos Elizondo, who was a consultant to a Virginia company known as Keystone, testified in the government's case-in-chief that in early 2003, the defendant demanded and received $10,000 in connection with Keystone's contract to remove asbestos from and demolish trash incinerators at the Benning Road Solid Waste Transfer Station in Northeast Washington, D.C. Elizondo said that in exchange for the $10,000, the defendant agreed not to recommend that Keystone be barred from contracting with the District of Columbia, guaranteed approval of Keystone's work permit, and ensured that Keystone could do its job free from regulatory interference.

At the close of the government's case-in-chief, and at the close of all the evidence in

the case, the defendant moved for a judgment of acquittal on both counts of the indictment under Rule 29(a). The motion was denied with respect to Count One (bribery). Ruling was reserved with respect to Count Two (extortion). Both charges were submitted to the jury. *See* Fed.R.Crim.P. 29(b) (authorizing a trial court to reserve ruling and submit charges to the jury for a verdict).

## DISCUSSION

"It is axiomatic on a motion for acquittal that all reasonable inferences are to be resolved in favor of the prosecution and the trial court is required to view the evidence in the light most favorable to the Government with respect to each element of the offense." *United States v. Skinner,* 425 F.2d 552, 554 (D.C.Cir.1970); *see Powell v. United States,* 418 F.2d 470, 473 (D.C.Cir.1969). However, "the Government's case cannot rest on mere suspicion, conjecture or speculation. There must be sufficient credible evidence and justifiable inferences of fact from which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *Skinner,* 425 F.2d at 554; *see also Powell,* 418 F.2d at 473 ("A motion for a judgment of acquittal enjoins the trial judge to 'determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.' ") (citation omitted). A defendant's motion for acquittal must be decided "on the basis of the evidence at the time the ruling was reserved." Fed.R.Crim.P. 29(b).

Under the Hobbs Act, 18 U.S.C. § 1951(a), the government must prove beyond a reasonable doubt that (1) the defendant knowingly and deliberately obtained or attempted to obtain property from another with that person's consent; (2) the

defendant did so by wrongful use of actual or threatened fear, or under color of official right; and (3) the defendant's conduct affected interstate commerce. *See United States v. Buffey,* 899 F.2d 1402, 1403 (4th Cir.1990) (citing *United States v. De Parias,* 805 F.2d 1447, 1450 (11th Cir.1986)); 2A Kevin F. O'Malley, Jay E. Grenig, and Hon. William C. Lee, *Federal Jury Practice and Instructions: Criminal* § 53.03 (5th Ed.2000 & 2003 Pocket Part). The Hobbs Act requires a showing of only a *de minimus* connection with interstate commerce. *See, e.g., United States v. Rodriguez,* 360 F.3d 949, 955 (9th Cir.2004); *United States v. Capozzi,* 347 F.3d 327, 335 (1st Cir.2003); *United States v. Curtis,* 344 F.3d 1057, 1070 (10th Cir.2003); *United States v. Fabian,* 312 F.3d 550, 555 (2d Cir.2002); *United States v. Chance,* 306 F.3d 356, 374 (6th Cir.2002). "This is not a heavy burden," *United States v. DiCarlantonio,* 870 F.2d 1058, 1060 (6th Cir. 1989), and the *de minimus* effect on interstate commerce may be demonstrated "though the impact upon commerce is small, and it may be shown by proof of probabilities without evidence that any particular commercial movements were affected." *Buffey,* 899 F.2d at 1404; *see also United States v. Huynh,* 60 F.3d 1386, 1389 (9th Cir.1995) (" '[A]n effect on interstate commerce is established by proof of an actual impact, however small, or in the absence of actual impact, by proof of a probable or potential impact.' ") (citation omitted). Indeed,

[t]he looseness with which courts have applied the interstate commerce element, finding the element satisfied even where the effect on interstate commerce is indirect, minimal and less than certain, reflects the Act's "purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery, or physical violence."

*Buffey*, 899 F.2d at 1404 (quoting *Stirone v. United States*, 361 U.S. 212, 215, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960)); *see also United States v. Peete*, 919 F.2d 1168, 1174 (6th Cir.1990) ("There is no requirement that there be an actual effect on interstate commerce—only a realistic probability that an extortion will have an effect on interstate commerce."); *United States v. Stillo*, 57 F.3d 553, 558 (7th Cir.1995) ("It is the potential effect on interstate commerce at the time of the offense which is relevant.").

The defendant was charged in Count Two of the indictment with extortion by threatened economic harm and under color of official right. Specifically, the government alleged that the defendant

> did knowingly and willfully affect and attempt to affect interstate commerce by extortion, in that defendant ... unlawfully obtained $10,000 in cash not due him or his office from [Carlos Elizondo], with [Elizondo's] consent, induced by wrongful use of actual and threatened economic harm and under color of official right, to wit: defendant ... attempted to obtain and did obtain from Consultant $10,000 in cash by threatening and inducing fear that if payment was not made, defendant ... would perform an official act as follows: a) require the Benning Road project asbestos abatement to proceed according to processes and regulations applicable to friable rather than non-friable asbestos; b) recommending and not seeking to prevent [Keystone's] debarment in the District of Columbia; and c) otherwise causing [Keystone] to encounter oversight and regulatory problems as the work on the Benning Road project proceeded, all of which would have caused economic harm to [Keystone].

Indictment (Count Two) at 5–6. In order for a reasonable jury to fairly conclude guilt beyond a reasonable doubt on Count Two, the government had the burden of offering evidence that the defendant's alleged conduct had an actual effect, however slight, or in the absence of actual effect, a probable or potential effect, on interstate commerce.

The defendant argues that the only evidence offered by the government to prove a *de minimis* effect on interstate commerce[1] was the $10,000 supplied by the Federal Bureau of Investigation ("FBI") to Elizondo for use in paying the bribe underlying Count One. According to the defendant, the $10,000 payment in FBI money cannot alone satisfy the interstate commerce element in Count Two because its effect on interstate commerce is too speculative and attenuated. (*See* May 5, 2004 (a.m.) Tr. at 74–77.) In support of his argument, the defendant relies on *DiCarlantonio* and *United States v. Brantley*, 777 F.2d 159 (4th Cir.1985).

*DiCarlantonio* stands for the proposition that when a defendant is charged only with a substantive violation of the Hobbs Act—and not also attempted extortion—the government cannot satisfy the interstate commerce element by relying solely on evidence that a defendant received FBI funds. *See* 870 F.2d at 1060–61. The opinion recognized, however, that receipt of FBI funds "erects no barrier to attempt charges ...." *Id.* at 1060 (citing *United States v. Rindone*, 631 F.2d 491, 494 (7th Cir.1980)). Here, the defendant was charged with both a substantive violation and an attempted violation of the Hobbs Act,[2] and the limited holding of *DiCarlan-*

---

1. The defendant's Rule 29 motion focused on the sufficiency of the evidence on the third element of a Hobbs Act violation.

2. The final instructions to the jurors instructed them as to both a substantive and attempted violation of the Hobbs Act:

> Count Two of the indictment charges the defendant with extortion by threatened eco-

*tonio* is not applicable. *See United States v. Cole*, 984 F.2d 221, 222–23 (7th Cir.1993) (rejecting the defendant's argument that he did not obstruct, delay or affect commerce because the money involved was FBI funds; "the Act prohibits not only direct obstruction, delay or affect on commerce, but also attempts to do so.... [Defendant] violated the Act when he solicited the kickback" from another person); *Rindone*, 631 F.2d at 493, 494 (holding, in a case in which the defendant was charged with both a substantive and attempted violation of the Hobbs Act, that the offense of extortion is complete at the time a defendant demands payment but before the actual transfer of money, thus the fact "that the F.B.I. provided the payoff money[ ] is irrelevant to the jurisdictional inquiry"[3]).

*Brantley* is similarly limited in its application. In *Brantley*, the FBI created a sham club and gambling den in South Carolina, and then transported its own gambling devices from Virginia, assembled FBI agents at the club to gamble with FBI money, and provided those agents with whiskey that had moved in interstate commerce. Because the gambling devices "were not the subject of commercial transactions[,]", *id.* at 161–62, and the whiskey was not "reasonably necessary or appropriate" to the FBI's sham business, *id.* at 162, the Fourth Circuit determined that "nothing ever happened at the club except pretense." *Id.* at 162. The court held that the facts in *Brantley* did not establish the interstate commerce element of the Hobbs Act.[4] *See id.* at 163. Because the government here relies on the actual effect, or the probable or potential effect, of the defendant's conduct on interstate commerce with respect to a legitimate Virginia-based company, and not a sham company created by the FBI, the defendant's reliance on *Brantley* is misplaced.

■ When viewed most favorably to the government, the evidence in the govern-

---

nomic harm and under color of official right. The essential elements of this offense, each of which the government must prove beyond a reasonable doubt, are:

First, that the defendant knowingly and deliberately obtained or attempted to obtain property from another with that person's consent;

Second, that the defendant did so by wrongful use of actual or threatened fear, or under color of official right.

Third, that the defendant's conduct affected interstate commerce.

(Final Instructions at 15–16.)

3. *Rindone* added, "[t]hat the extortion could not at the moment of the payoff have actually affected commerce is not enough to defeat the jurisdictional nexus. All that is required is the showing ... that at the time of the attempt, a realistic probability existed that interstate commerce would be affected." 631 F.2d at 494. Here, at the time Elizondo paid the $10,000 in FBI funds to the defendant, a realistic probability existed that Virginia-based Keystone's permit for asbestos removal in the District of Columbia would be approved and that Keystone would not be barred from doing future work within the District of Columbia, either of which would affect interstate commerce.

4. Significantly, *Brantley* recognized that "[t]he Hobbs Act proscribes inchoate offenses as well as actual obstructions of commerce," 777 F.2d at 163, but determined that when the FBI manufactures jurisdiction through the pretense of a sham company, the defendant's mistaken assumption that commerce would be affected is not sufficient for a conviction under the Act.

[W]e do not think the convictions of the substantive offenses may be sustained on the basis of the defendant's mistaken assumption that commerce would be affected. The defendants were the victims of false pretense, and the falsity induced the erroneous assumption. In those circumstances, what the defendants may have believed is too fragile a connection with commerce to supply the jurisdictional predicate for conviction upon the substantive charge of obstruction by extortionate means.

*Id.* at 163.

ment's case-in-chief showed that the defendant knowingly and deliberately attempted to obtain and did obtain $10,000 in exchange for guaranteeing the approval of Keystone's work permit to remove asbestos from the Benning Road Solid Waste Transfer Station. The government also established that the Benning Road project is located in Washington, D.C., whereas Keystone is a Virginia company. Thus, the government's evidence, at the very least, provides a basis for a reasonable inference that the approval of Keystone's permit for the Benning Road project would have had a probable or potential impact on Keystone doing business in the District of Columbia. "[G]iving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact," *Powell*, 418 F.2d at 473, a reasonable mind might fairly conclude beyond a reasonable doubt that the defendant's conduct affected interstate commerce. *See Skinner*, 425 F.2d at 554; *Powell*, 418 F.2d at 473.

 The government's evidence, if believed, also showed that in exchange for $10,000, the defendant allegedly agreed to use his power and authority as an asbestos inspector with the D.C. Department of Health to ensure that Keystone was not barred from doing work in the District of Columbia. The interstate commerce element of the Hobbs Act can be established "by proof that the defendant knew of or was motivated by the victim's connection to interstate commerce." *Chance*, 306 F.3d at 374; *see also Rindone*, 631 F.2d at 494 (stating that "an implied, even unrealizable, threat to affect the future business operation of the victim if the extortionate demand is not met" satisfies the interstate commerce element of the Hobbs Act). The defendant's promise to Elizondo to ensure that Keystone would not be barred from doing business in the District of Co-

lumbia showed that he "knew of or was motivated by [Keystone's] connection to interstate commerce[,]" *Chance*, 306 F.3d at 374, and sought to use Keystone's vulnerability to his own pecuniary advantage. A jury could justifiably find an effect on interstate commerce from the government's evidence that (1) Keystone—a Virginia company—could have been barred from doing work in the District of Columbia; and (2) the defendant attempted to and did obtain $10,000 from Elizondo based on the defendant's knowledge and exploitation of Keystone's predicament. *See Skinner*, 425 F.2d at 554; *Powell*, 418 F.2d at 473.

### CONCLUSION AND ORDER

The government's evidence during its case-in-chief, if accepted as true by the jury, demonstrated that the defendant's conduct had or reasonably would have had more than a *de minimus* effect on interstate commerce. Therefore, it is hereby

ORDERED that the defendant's motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 with respect to Count Two of the indictment be, and hereby is, DENIED.